JACKSON, <em>ex dem.</em> LAWRENCE and others, <em>against</em> HILTON and another.

Where A., seised in fee simple of land, devises it for life, and dies, leaving B. his heir at law, who dies before the determination of the estate for life, the heirs of B. are not, as such, entitled to the land, after the death of the tenant for life; for B. had not such a seisin as to create a new stock of descent: and a person claiming the land by descent, must entitle himself as heir of A., who was last actually seised in fee.

THIS was an action of ejectment, brought to recover three undivided fourth parts of a house and lot of land, situate in the first ward of the city of *New-York*. The cause was tried before Mr. J. *Yates*, at the *New-York* sittings, in *April*, 1818.

The plaintiff produced in evidence, the will of *Daniel Lawrence*, dated the 14th of *March*, 1755, and proved, on the 18th of *August*, 1757, which contained the following devise of the premises in question : " *Item*, I give unto my daughter *Mehitable Hilton*, relict of Captain *Ralph Hilton*, late of the city of *New-York*, deceased, my dwelling house, in *New-York*, which I lately purchased of Captain *Lush*, during her natural life." The testator made no further disposition of the premises ; and he also gave to his executors full power and authority to sell and convey all his real estate.

A witness on the part of the plaintiff, testified, that *Mehitable*, the daughter of the testator, occupied the premises,

under her father's will, as long as the witness could remem-
ber, and that she died about seven years ago, aged about
90 years ; that the testator had two sons, of whom *Abraham*
*Lawrence* was the eldest, and that the other son went to sea
before his father's death, and had never been heard of since,
and was supposed to have been lost ; and that *A. Lawrence*
died about fourteen years ago, having had six children, some
of whom died in the life time of their father. *Mary Law-
rence* and *Clarissa Wenman*, two of the lessors of the plain-
tiff, are the daughters of *A. Lawrence*, and *Mary Ann*, the
wife of *L. G. Coutant*, she and her husband being also les-
sors, and *John L. Quick*, the other lessor, are the children
of *Nancy*, one of the daughters of *A. Lawrence*, who died
during the life of her father.

The counsel for the defendants insisted, that under the
power in the will of *D. Lawrence*, the premises in question
went to his executors for the benefit of the residuary lega-
tees ; and that the reversionary estate, after the death of *M.
Hilton*, could not descend to *A. Lawrence*, as the only son
and heir at law of the testator, and, therefore, that the plain-
tiff was not entitled to recover. A verdict was taken for
the plaintiff, subject to the opinion of the Court, on the
point above stated.

*M. S. Wilkins*, for the plaintiff, contended, that *A. Law-
rence* being the eldest son of the testator, the estate vested
in him as heir at law, and upon his death, descended to the
lessors of the plaintiff.

*D. B. Ogden*, contra. The testator devised to his daugh-
ter *M.* for life, and made no disposition of the reversion.
A person who claims by *descent* must show himself heir to
the person *last seised.* (*Co. Litt.* 11. *b.*) The estate for life
being a freehold, the seisin was in the daughter, during her
life ; and *A. L.* the eldest son, could not, therefore, be seis-
ed. (*Co. Litt.* 15. *a.*) He who claims the reversion, as
heir, must make himself heir to *D. L.* the testator. (*Rat-
cliffe's case*, 3 *Co.* 42. *Cro. Car.* 410.) The Court de-
cided in *Bates* v. *Shraeder,* (13 *Johns. Rep.* 260.) that a per-
son claiming the reversion, must deduce his title immedi-

ately from the person last actually seised ; and that a tenan-
cy by the *curtesy*, or for life, suspended the descent, so that
the eldest son or heir at law is not so seised as to constitute
a new stock of descent. (*a*)   The seisin here, being in the
tenant for life, on the determination of that estate, the re-
version must go to the heirs of *D. L.* the testator.   The
lessors of the plaintiff could recover, therefore, but a very
small proportion ; not more than two thirty-third parts of
one thirty-third part, there being numerous children, and
grandchildren.   (*Watkins on Descents*, 149.)

*T. A. Emmet*, in reply, said, that the case of *Bates* v.
*Shraeder*, was founded on that of *Jackson* v. *Gomez*,
(3 *Johns. Cases*, 214.) which was not within the statute of
descents, and did not apply.   The doctrine contended for
by the defendant's counsel is, that where there is an estate
for life, directly devised, and nothing is said as to the re-
version, the reversion in fee is no where.   When *D. L.*,
the testator, died, *A. L.* his son, was his heir at law, on whom,
according to the statute of descents, the reversion in fee
was cast, and through whom the lessors trace their descent
from *D. L.*   The lessors of the plaintiff have, therefore,
shown themselves to be heirs of the person last seised.

SPENCER, J. delivered the opinion of the Court.   The
lessors claim three-fourths of the premises, as heirs to
*Abraham Lawrence.*   Although it is not stated, that *Daniel
Lawrence*, the ancestor, had any other children than *Abra-
ham*, and a son, who went to sea in the life-time of his father,
and was never heard of, and who must be presumed to be
dead ; yet the case has been argued, as though there were
other children of the ancestor *Daniel Lawrence ;* and, it
seems, that the question intended to be submitted, is, whether
*Abraham Lawrence*, as the eldest son, and heir at law of his
father, became, as such, so seised of the premises devised
to the daughter, *Mehitabel Hilton*, for life, as that his chil-
dren can recover the premises as his heirs.   We are of opi-
nion that they cannot.   It is a maxim of the common law,
which *De Grey*, Ch. Justice, says, in *Goodtitle* v. *Newman*,
(3 *Wil.* 526 ) has subsisted for ages, as appears by *Bracton*,

(*a*) Vide *Gilb. on Tenures*, 15, 16.   (4 *Ed.*)   *Watkins on Descents*, 85. 108.

(lib. 2. fol. 65.) *Britton*, (cap. 119. 271.) and *Fleta*, (lib. 6. cap. 1. s. 14.) that lands in fee simple must descend to the heir of the whole blood of the person last actually seised thereof. Lord *Coke*, in his commentary on the 8th section of *Littleton*, 15.*a.* states the law to be, that, if the father make a lease for years, and the lessee entereth and dieth, and the eldest son dieth during the term, before entry and receipt of the rent, the youngest son of the half blood shall not inherit, but the sister; because, the possession of the lessee for years is the possession of the eldest son, so as he is actually seised of the fee simple, and consequently, the sister of the whole blood is to be heir. But, he observes, in the case aforesaid, if the father made a lease for life, or a gift in tail, and dieth, and the eldest son dieth in the life of a tenant for life, or tenant in tail, the younger brother of the half blood shall inherit, because the tenant for life, or the tenant in tail, is seised of the freehold, and the eldest son had nothing but a reversion expectant upon that freehold or estate tail, and, therefore, the youngest son shall inherit the land, as heir to his father, who was last seised of the actual freehold. (*3 Co. Rep.* 42. *Ratcliff's* case.)

This doctrine has received the sanction of this Court on two occasions; in *Jackson* v. *Hendricks*, (3 *Johns. Cas.* 214.) and in *Bates* v. *Shraeder*, (13 *Johns. Rep.* 200.) In the first case, *Esther Hendricks* died seised of a real estate in 1775, leaving a husband and two sons and three daughters; the husband became seised by the curtesy, until his decease in 1798; the eldest son died in 1784, intestate, and without issue; the youngest son entered after the death of his father; the sisters brought their ejectment, and the Court held, that the case was governed by the common law, and that the statute of descents did not apply; that the descent to the eldest son was suspended by the existence of the estate of the tenant by the curtesy, and that the eldest son was not seised so as to form a new stock of descent, or to constitute a *possessio fratris*; and that the mother was the person last seised, from whom the descent must be claimed; and as she died before our statute of descents, her surviving son was adjudged to be entitled to the estate, to the total exclusion of his sisters.

In the case of *Bates* v. *Shraeder*, the same doctrine pre-vailed.  The counsel for the plaintiff seemed to suppose, that this doctrine was not correct, because the reversion would be in no one, during the interval between the death of *Daniel Lawrence* and his daughter *Mehitabel ;* it was an in-choate estate in *Abraham,* dependant on his surviving the tenant for life.

This being the law, unless the lessors can make a title, as heirs to *Daniel Lawrence,* they cannot recover, and they have failed to show what proportions they are entitled to as such heirs.