# The Pittsburg and Connellsville Railroad Company *versus* The County of Allegheny.

1. An agreement between parties having power to contract, to pay interest on a security received in payment or satisfaction of a contract, if it be part of the consideration of the contract, is binding.

2. By Acts of Assembly a county was authorized to subscribe to the stock of a railroad company, to issue bonds with interest and deliver them to the company in payment for the stock; the company was authorized to receive them on the terms of paying, to the county or its creditors holding the bonds interest equal to the interest on the bonds. This was a premium to induce the county to subscribe, and the legislature could grant to both corporations power so to contract.

3. Without this power, the company could not so contract. It was incorporated to build a road with means furnished by those taking shares.

[Pittsburg and Connellsville Railroad Co. v. County of Allegheny.]

4. Special authority is necessary for a railroad company to borrow money and mortgage their franchises and property to secure it, because not incident to its charter.

5. Contracts, engagements and acts of a corporation, not within the scope of the undertaking authorized by the charter, cannot be made by the corporation.

6. A corporation has no power but that expressly given or necessarily flowing from powers given.

7. Payment of interest on stock periodically out of the capital before earnings are made is within the prohibition of a charter against paying dividends out of the capital.

8. Excess in the exercise of power by a corporation is to be redressed by the Commonwealth, and not by a private party.

9. A railroad company was authorized to make a road between points named and to pay interest on instalments on stock until the road should be completed. Interest is not payable beyond the time the road had been completed between those points.

10. The company were, after their act of incorporation, authorized to extend the road to other points. *Held*, that this did not authorize the payment of interest until the road should be completed to those points.

11. Bonds with semi-annual coupons were issued to the company by a county in payment of stock, the company agreeing to pay the interest on the bonds. The county paid the interest. *Held*, that the company was liable for interest on the coupons.

12. Certificates of stock under the seal of the company, containing the stipulation to pay interest, were issued to the county. In an action by the county to recover interest paid by her, *held*, that the Statute of Limitations did not operate.

13. Under a judgment against the county, her stock in the company was sold by the marshal. *Held*, that this vendee obtained the stock only, not a right to the interest on the bonds.

November 4th and 5th 1870.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county*: No. 165, to October and November Term 1865.

This was an action of debt brought, January 29th 1867, by The County of Allegheny against The Pittsburg and Connellsville Railroad Company.

The plaintiff in the declaration demanded the sum of $1,000,000 which the defendants owed and detained, &c.

The first count was that on the 29th of June 1853, in consideration that the plaintiff would subscribe for 15,000 shares of the stock of the defendants and pay $750,000 for it in bonds of the plaintiff bearing interest, payable semi-annually, and falling due in thirty years, the defendants agreed to pay to the holders of the bonds the interest as it fell ·due, that the plaintiff subscribed for the 15,000 shares of stock and delivered the bonds of the plaintiff to the amount of $750,000 with interest coupons attached, payable semi-annually at the rate of 6 per cent. per annum, that the defendant sold the bonds to third persons and provided for the payment of the interest, but that on January 1st 1858 and since they have refused to pay the interest, and by reason of such

[Pittsburg and Connellsville Railroad Co. *v.* County of Allegheny.]

refusal, the plaintiff became liable and has since been compelled to pay to the holders of the bonds sums of money amounting in the aggregate to $1,000,000, and plaintiff has sustained damage to the amount of $1,000,000, "by reason of which an action has accrued to the plaintiff to demand and have from the defendants the said sum of $1,000,000," but the defendants have refused to pay; to the damage of the plaintiff $1,000,000, &c.

The second count was, that on the same day, in consideration of a subscription by the plaintiff for 15,000 shares of the defendants' stock, and of bonds of the plaintiff "then and there delivered to the defendants as payment for said stock," the defendants agreed to furnish funds and pay all interest "semi-annually, falling due on said bonds, and agreed fully to indemnify the plaintiff against any and all sums of money falling due as interest on said obligations, and to keep the said county harmless in that regard;" that the defendants had not paid interest since July 1st 1858, and by reason thereof the plaintiff has been compelled to pay to the holders of the bonds $1,000,000, "by reason of which said promises the plaintiff hath suffered damage to the amount of $1,000,000, and thereby an action hath accrued to the plaintiff to demand and have of and from defendant the said sum of $1,000,000," &c.    There was a count for money paid and one on an account stated.

The defendants were incorporated by an act passed April 3d 1837, and authorized to build a railroad from Pittsburg to Connellsville.    By the 15th section of the Act, the directors were authorized to declare semi-annual dividends of the profits, the dividends at no time to exceed "the net profits actually acquired by the company."    By the 6th section of an Act of April 18th 1843, the counties of Allegheny and others and any city, borough or incorporated company were authorized to subscribe to the stock of the company "as fully as any individual could do;" and by the 7th section the company were empowered to extend their railroad beyond Connellsville to Smithfield or any other point on the waters of the Youghiogheny within the Commonwealth.    By the 1st section of an Act of April 12th 1853 the cities of Pittsburg and Allegheny and the boroughs of West Newton and Connellsville were authorized to subscribe for shares, to borrow money and issues certificates of loan with interest which might be received by the company in payment of instalments on the shares on such terms as shall be agreed upon between the company and "said corporations."    By the 2d section the company was authorized to pay to the shareholders interest at the rate of 6 per cent. per annum on all instalments paid, the interest to be charged to the cost of construction, and until a dividend should be declared all the profits and earnings of the road should be credited to the cost of construction.    By the 5th section of an Act of April 18th 1853 the counties theretofore authorized to subscribe for stock might bor-

[Pittsburg and Connellsville Railroad Co. *v.* County of Allegheny.]

row money to pay for their subscriptions and the bonds to be issued with interest at 6 per cent. per annum might be received as cash by the company in payment of instalments. The 6th section authorized the company to extend their road to any point in Somerset and Bedford counties to form a connection with the Chambersburg and Allegheny Railroad or any other road that may be constructed. On the 17th of May 1853 the commissioners of Allegheny county resolved that they would subscribe on behalf of the county for 15,000 shares of the stock of the Pittsburg and Connellsville Railroad Co. amounting to $750,000, payable in the bonds of the company 30 years after date, with interest at 6 per cent. per annum, payable semi-annually, on the following terms, amongst others: that the company issue certificates of stock as may be required by the county commissioners bearing interest for thirty years at 6 per cent. per annum, payable semi-annually at the same times and places with the interest on the bonds; that the company pledge to Allegheny county the stock of the company and all their real and personal estate for the payment of interest on the stock to be issued to the county during the thirty years, and pay the interest on the certificates to the holders of the county bonds at the same times and places with the payment of the interest on the bonds; that the company will pay to the county the excess of dividends over the interest on the bonds; that the company pay all taxes on the bonds and stock, &c. This proposition was made under the corporate seal of the county. On the 8th of June 1853, at a meeting of the stockholders of the company, the Acts of April 12th and 18th 1853 were accepted by an unanimous vote. The proposition of the county of Allegheny also was accepted on the terms accompanying it, and the president and directors were authorized to receive the subscription of the county for 15,000 shares of stock, to receive as cash the bonds of the company in payment, to issue certificates of stock to the county for its subscription "bearing interest at the rate of 6 per cent.," the payment of the interest to be made at the same places and times as the payment of the interest on the bonds; the stockholders also pledged the stock of the company, their road and all their real and personal property for the faithful payment of the semi-annual interest on the stock issued to the county, the dates of the certificates to correspond with the dates of the bonds; the president and directors were instructed to give the pledge in the certificate or in any other legal manner that might be required by the county. At a meeting of the board of directors of the company, held June 28th 1853, they approved and ratified the action of the stockholders and directed the president and treasurer to issue certificates of stock to Allegheny county in accordance with the resolutions of the stockholders.

The certificates of stock recited the proposal of the county to

13 P. F. SMITH—9

[Pittsburg and Connellsville Railroad Co. *v.* County of Allegheny.]

subscribe for 15,000 shares of stock and to pay for them in county bonds, &c., its acceptance by the stockholders, with the pledge, &c., and the resolution of the directors; they pledged the property of the company for the performance of the conditions, and certified that the county had paid " $50 per share in full, and is entitled to 15,000 shares of the capital stock of the Pittsburg and Connellsville Railroad Company, amounting to the sum of $750,000, the said railroad company hereby agreeing to pay interest at 6 per cent. per annum on the last aforesaid sum, for the term of thirty years from the date hereof, semi-annually on the first days of July and January, in the city of New York, by applying the same to the payment of the semi-annual interest coming due on the bonds so issued by the county aforesaid and payable the same days to the holders of the said bonds;" with a further stipulation that the excess of dividends over the interest should be paid to the county in accordance with the terms of the proposal. The certificate was under the seal of the company. The bonds were with coupons and in the usual form, to the company or bearer, the interest payable at the office of Winslow, Lanier & Co., New York, on the first days of January and July, and recited that they were issued under the authority of Acts of 1843 and 1853.

The following is the form of the assignment and guaranty of the bonds of the company:

"For value received, the Pittsburg and Connellsville Railroad Company assigns the within bond to —— ——, or bearer, and guaranties the payment of the principal and interest of the same, as within stipulated.

By order of the Board of Directors of said Railroad Company.
[Seal of Co.]          WM. LARIMER, Jr., President."

Stock and bonds to the amount of $750,000 were issued by the company and the county respectively according to the proposal of the county. There was evidence that in the whole about $300,000 —interest on bonds and on coupons from January 1st 1858 to January 1st 1867, both inclusive—had been paid by the plaintiff in cash or other bonds to the holders of the original bonds—that there were no net earnings from which to declare dividends, and that the road was open and running between Pittsburg and Connellsville in October 1861.

The defendants gave evidence that in February 1861, the 15,000 shares of stock of the plaintiff were sold by the United States marshal, under a judgment recovered in the Circuit Court of the United States; they were bought for the Baltimore and Ohio Railroad Company and transferred to them on the 13th of February; and that the defendants had commenced as early as 1856 and were now constructing under authority of different Acts of Assembly portions of the road beyond Connellsville. There was evidence also tending to show the inability of the company to pay

[Pittsburg and Connellsville Railroad Co. v. County of Allegheny.]

interest; that the sale of the plaintiff's bonds by the defendants was prevented by their repudiation of them, &c.

The defendants submitted a great number of points, all which but one (not necessary to be noticed) were refused.

The court (Mellon, J.) directed the jury to find in favor of the plaintiff for the full amount of all payments made by the county, whether in cash or in bonds, and whether for coupons matured before or after the marshal's sale of stock, with interest to date of verdict.

The verdict was for the plaintiff for $290,697.02.

The defendants moved in arrest of judgment for the following reasons:—

"1. That the action of debt does not lie for the cause of action set forth therein.

"2. That the facts averred therein do not set forth a good cause of action.

"3. On the whole declaration for a misjoinder of counts,—in that the first and second counts (especially the second) sound in damages, and substantially are counts in assumpsit, whereas the last two counts are in debt."

The motion was overruled and judgment entered on the verdict.

The defendants took out a writ of error. The main points raised by the assignments of error, in addition to the points presented by the reasons for arrest of judgment, were the following:

"1. That the testimony did not sustain the material allegations of the *narr.* in this, that the contract as proved varied substantially from that declared on.

"2. That the contract, both as declared on and as proved, was invalid, as being without consideration, against public policy, in violation of the company's charter, and in evasion of the Act authorizing the county's subscription.

"3. But even if the company's agreement to pay interest on the stock was valid and binding, yet the marshal's sale of the stock carried to the vendee, not only the interest accruing subsequently to such sale, but also that which had accrued and then remained unpaid.

"4. But if the marshal's sale did not carry the then accrued and unpaid interest, then such interest, being separated from its principal by the sale, would be barred by a failure to sue for it in six years."

*H. Burgwin* and *J. R. Tucker* (of Maryland), for plaintiff in error.—An agreement to pay interest on stock is a guaranty of dividends and puts the stock in the position of preferred stock: Stevens *v.* South Devon Railroad, 12 Eng. L. & Eq. 229. Such agreement is against public policy: Troy and Boston Railroad *v.* Tibbetts, 18 Barb. 307; McKeen's Appeal, 6 Wright 484.

[Pittsburg and Connellsville Railroad Co. v. County of Allegheny.]

The agreement to pay interest was without consideration; the consideration for the bonds was the stock and the right to receive dividends with the other shareholders: Angell and Ames on Corp. 557. Part of a separable agreement may fail for want of consideration: Add. on Cont. 658. The agreement was a fraud on other shareholders and creditors: Miller v. Pitts. and Conn. Railroad, 4 Wright 239. It tends to defeat the purposes of the charter: Mining Co. v. Levy, 4 P. F. Smith 227, 7 Amer. Law Reg. 577. The sound parts of a contract may stand and the unsound be rejected: Heckert v. Fegely, 6 W. & S. 145; Frazier v. Thompson, 2 Id. 235; Gelpecke v. Dubuque, 1 Wall. 221; Irvin v. Stone, 6 Cush. 511. The marshal's sale carried the interest to his vendee, the interest being payable to the holders of the stock. But if the interest could be separated, it was payable as soon as each payment was due, and therefore under the operation of the Statute of Limitations: Thomas v. Allen, 1 Hill 145. The *narr.* does not set out a contract under seal, and if the contract be under seal it should in answer to plea of the statute be replied specially: Davis v. Shoemaker, 1 Rawle 135; Webster v. Newbold, 5 Wright 493. The agreement to issue stock and receive bonds and pledge the payment of interest was closed by the company's acceptance of the county's proposal; it was therefore parol and could not be made a specialty by the attaching of the seal to the guaranty by the president.

The first two counts of the *narr.* were to pay interest on the bonds and to indemnify the county against their payment. The defendants' contract was to pay interest on the stock; the payment of the coupons was merely incidental. On the count for money paid there could be no recovery; the defendant having undertaken to pay the plaintiff's debt and the plaintiff having paid it himself must declare specially: Spencer v. Parry, 3 Ad. & El. 331; Chitty Conts. 592 a; Crafts v. Tritton, 8 Taunt. 365. There was a misjoinder in the counts, part being in assumpsit and part in debt: Seip v. Drach, 2 Harris 355; Brumbaugh v. Keith, 7 Casey 327. Debt will not lie for the cause of action set out in the first two counts: Long v. Long, 1 Hill 597. Debt will not lie for interest unless secured by a penalty: 2 Tr. & Hal. Pr. 16, 22; 1 Chitty Pl. 106, 113; United States v. Colt, 1 P. C. C. R. 145, 1 Ventris 198. The plaintiffs, at most, can recover only for the interest paid in money; the giving other bonds is but substituting one promise for another: Pursel v. Ellis, 5 W. & S. 525.

*M. W. Achison* and *J. H. Sewell*, for defendant in error.— The contract to pay interest on stock is valid: Angell and Ames on Corp. sect. 271; McMasters v. Reed, 1 Grant 36; James v. C. & H. Railroad, 6 Amer. Law Reg. 718; Moran v. Miami Co.,

[Pittsburg and Connellsville Railroad Co. *v.* County of Allegheny.]

2 Black 726; City Bank *v.* Barnard, 1 Hall (N. Y.) 70. Conditional subscriptions to stock are valid : Erie and Waterford Plank Road Co. *v.* Brown, 1 Casey 156; Rhey *v.* The E. and S. Plank Road Co., 3 Id. 261; Philadelphia and West Chester Railroad Co. *v.* Hickman, 4 Id. 318; Pitts. and Conn. Railroad Co. *v.* Stewart, 5 Wright 54; Miller *v.* The Pitts. and Conn. Railroad Co., 4 Id. 237. The stockholders ratified the contract : McLaughlin *v.* Detroit and Milwaukie Railroad, 8 Mich. 100; Stevens *v.* S. Devon Railway, 12 Eng. L. & Eq. 229. The company having received all the benefits of the contract by the performance by the county of her part, cannot now set up legal incapacity to make it : Chester Glass Co. *v.* Dewey, 16 Mass. 94. The Commonwealth only can avoid it : Gr. Gulf Bank *v.* Archer, 8 Smedes & M. 151.

The party cannot now rescind : Palmer *v.* Lawrence, 3 Sandf. Law R. 162; Steam Nav. Co. *v.* Weed, 17 Barbour 398; Ins. Bank of Columbus *v.* United States Bank, 7 Penna. Law Journal 129; Leazure *v.* Hillegas, 7 S. & R. 320; Goundie *v.* Northampton Water Co., 7 Barr 233; Steamboat Co. *v.* M'Cutcheon, 1 Harris 15; Allegheny *v.* McClurkan, 2 Id. 81; Cleveland & Pitts. Railroad *v.* Speer, 6 P. F. Smith 325; Commonwealth *v.* Del. & Hudson Canal Co., 7 Wright 295. The Act of April 11th 1856, sect. 1, Pamph. Laws 323, cured all irregularities in the proceedings of the directors : Commonwealth *v.* Pitts. & Conn. Railroad, 8 P. F. Smith 26. Under the contract, the interest was to be paid by the company to the holders of the bonds. As between the company and the county, the company was the debtor : Ponder *v.* Carter, 12 Ired. 242. By the marshal's sale, the interest did not pass with the stock : Ohio *v.* Cleveland & Toledo Railroad Co., 6 Ohio R. 489. The purchaser of the stock obtained no rights, but such as the county had. The interest was payable to the bondholders : Mechanics' Bk. *v.* N. Y. & N. H. Railroad, 13 N. Y. 599; McCready *v.* Runsey, 6 Duer 574; Vansands *v.* Middlesex Bank, 26 Conn., 144; Abbott's Dig. of Law of Corps. 758, 759, pl. 209, 216. Stock was not liable to sale at common law; Angell & Ames on Corp., sects. 588, 589; Commonwealth *v.* Watmough, 6 Wharton 137; Act of June 16th, 1836, sect. 22, Pamph. Laws 764, Purd. 432, pl. 12; Sewall *v.* Lancaster Bank, 17 S. & R. 285. As to the Statute of Limitations, all the coupons were paid by the county within six years from the bringing the suit : Angell on Lim., sect. 131 et seq; Jones *v.* Trimble, 3 Rawle 381; Ponder *v.* Carter, sup. Debt was the proper form of action : 2 Tr. & H. (Fish), 16, 20; 1 Chitty's Pl. 109, 369, 374; Home *v.* Temple, 3 McLean 150; Franklin Ins. Co. *v.* Massey, 9 Casey 221; People's Ins. Co. *v.* Spenser, 3 P. F. Smith 353; Barber *v.* Butcher, 8 Q. B. 863; 1 Saund. Pl. & Ev. 898; Metcalf *v.* Robinson, 2 McLean 363; Gale *v.* O'Brien, 13 Johns. 189 : Verdict

[Pittsburg and Connellsville Railroad Co. *v.* County of Allegheny.]

cures formal defects: Robinson *v.* English, 10 Casey 324; Corson *v.* Hunt, 2 Harris 510; Ward *v.* Stevenson, 3 Id. 21. A count for money paid will lie for payment on request, express or implied 1 Chitty's Pl. 350, and note 3; 1 Selwyn's N. P. 73; Barclay *v.* Gooch, 2 Esp. 571; Witherby *v.* Mann, 11 Johns. 518; County of Beaver *v.* Armstrong, 8 Wright 65; Craig *v.* Vicksburg, 31 Miss. 216.

The opinion of the court was delivered, January 3d 1870, by

THOMPSON, C. J.—The great question in this case is, whether the plaintiff in error, the Pittsburg and Connellsville Railroad Company, is bound by its contract with the county of Allegheny, to pay interest on the bonds of the latter, received by it in payment of stock subscribed by the county. The contract of the company was to pay interest equal to that falling due on the bonds, for thirty years, the period of the maturity of the bonds, and this suit was brought to recover unpaid interest falling due on the 1st January 1858, and intermediately up to and including the 1st January 1867. Of course, a decision of this question will not only settle the liability of the company for interest past due, but that which is by the terms of the contract to fall due. Around this main question cluster others of minor importance, which may or may not receive notice in the discussion of the main question, but as the requirements of the investigation may demand.

Assuming, in the outset, that the form of action adopted by the plaintiff below was proper and suited to the circumstances of the case, and that the cause of action is well set out, viz., that the plaintiff below has paid interest during the period above mentioned, on the amount of the bonds issued to, and received by, the company for its stock, viz., $750,000, and interest on overdue coupons, and that this was proved, our attention is necessarily called, in the first place, to the various grounds of defence alleged below and here. I shall not attempt a discussion *seriatim*, of the twenty assignments of error on the record, but follow, rather, the grounds taken in argument as affording a more compact and satisfactory presentation of the defence.

1. The first position assumed in defence by the plaintiff in error, was, that the contract to pay interest on bonds taken in payment of stock delivered, was invalid, and contrary to the provisions of the railroad company's character; and, if not, that it was *ultra vires* the power of the company. In this connection it was argued with great force, that there was no consideration for the promise to pay interest, the stock of the company having been delivered in exchange for the bonds bearing interest, as authorized by Act of Assembly; that the stock was the consideration for the bonds bearing interest and the bonds for the stock; that the payment of interest on money received for

stock, or bonds equivalent to cash, was an anomaly in business, an absurdity; interest being a compensation allowed to the creditor for delay of payment by the debtor. It is difficult to escape the conclusion, that where neither the one nor the other of these considerations exists as a foundation on which to base a promise to pay interest, that there would be no ground to demand it. But as between parties unlimited in power to contract, and who do contract for the payment of interest on a security received in payment or satisfaction of a contract, although it might seem an unusual and extraordinary transaction, yet, if the stipulation were part and parcel of the consideration moving towards completing the contract, I see not why it would not be binding. It would not be illegal, if the contract of which it is parcel were the consideration, and itself were legal.

The county of Allegheny had authority, as the Acts of Assembly referred to show, to subscribe to the stock of this railroad company; to issue bonds with interest coupons attached, and to deliver them to the company in payment of stock, and the company were authorized to receive them on the terms of paying interest to the county, or its creditors, holding the bonds, equal to the interest falling due from time to time, on the bonds. This was, by whatever name called, a *bonus or premium* to induce the county to subscribe. The right so to contract is one of power; and as both these corporations were but creatures of the legislature, it was competent and within the scope of legislative power to invest them with the necessary power to contract, if they had it not as an incident of their charter. Beyond or without this authority, I think it will hardly be insisted that the railroad company could have so contracted. It was no necessary part of the undertaking for which it was incorporated. That was to build a road, and to build it with means furnished by parties taking shares in the company. We all know that in order to borrow money and mortgage the franchises and property of the company to secure its repayment, special authority is necessary, because it is not one of the incidents of the charter. Artificial bodies are not, like natural, free to do as they please. If they were, they would soon pass beyond the control of the creating power. Contracts, engagements, and acts of a corporation, not necessarily embraced within the scope of the undertaking authorized by the act of incorporation, cannot be legally done or performed by the corporation. It has no power or authority but that which is expressly given it, or which necessarily flows from those given: Commonwealth *v.* The Erie & N. E. Railroad Co., 3 Casey 339,—to which might be added many other authorities. And it was within this principle that the case of McMasters *v.* Reed, 1 Grant's Cases 36, was decided, holding that the Erie Canal Com-

pany might pay its contractors in its own obligations.   An obvious
reason why, without express authority, a contract like that we
are considering could not be legally entered into by the railroad
company, is, that to pay interest anterior to earnings by
the company, would require a diversion of its capital from
its legitimate, to a different purpose, from that for which it
was ostensibly obtained, and which was the inducement for the
subscriber to stock, to pay it in.   In sixteen years and eight
months the capital would all be sunk on this principle.   In half
that length of time—not an unusual period for the completion of
a road the length of the Pittsburgh and Connellsville road, espe-
cially at the time when the contract under consideration was
entered into, the half of the capital would be diverted to
pay interest, if the plan were universal and applicable to all the
stockholders.   If it were not, it would be a fraud on shareholders
who paid in their money, and did not receive interest.   Nothing
could be more completely *felo de se* of a project undertaken on
this policy than such a rule.   In almost all improvement compa-
nies, and especially in this by the 13th section of its act of incor-
poration, there is an express provision against an impairment of
the capital by paying dividends not earned.   It is true, interest
and dividends possess ordinarily dissimilar characteristics ; but
in a case like this it is only in name, with the distinction, perhaps,
that the principles of apportionment applies to the one and not to
the other : 6 Wright 479. It is not necessary, however, to multiply
words to prove what is most apparent—that a semi-annual pay-
ment of interest out of capital of a company before any earnings
are made is the same injury as if paid as dividends ; one is as
much within the prohibition as the other, both being within the
same mischief.   Without express authority, or beyond the limits
of authority conferred, we think the company had no power to
bind its stockholders, who constitute the company, to pay interest
to the county of Allegheny for a period of thirty years, or any
other period.

Miller *v.* The Pittsburg and Connellsville Railroad Company, 4
Wright 237, is no authority for a contrary doctrine, or that an
ordinary charter *ex visceribus suis* confers the power to contract
for interest, as claimed here.   Woodward, C. J., in that case
denounced the practice of paying interest on stock in strong
terms ; not denying, however, that if a company, having received
stock subscriptions on such terms, were compelled to resort to law
to enforce the payment, and such a condition stood in the way, it
could not be disregarded.   That is quite a different thing from
asserting that the company without authority could bind itself for
interest on stock.

The cases of Leazure *v.* Hillegas, 7 S. & R. 313, and Goundie
*v.* The Northampton Water Co., 7 Barr 233, cited by defendant

[Pittsburg and Connellsville Railroad Co. *v.* County of Allegheny.]

in error, belong to and enforce a principle alien to that in hand; they are, simply, that the acquisition of property in excess of the authority of a corporation cannot be redressed by a private party. For instance, in case of a sale and conveyance to a company—which had no right to invest in real estate at all, or had exceeded its limits, the vendor could not recover his property against his own deed. Nobody doubts this principle. Excess in the exercise of power by a corporation is to be redressed by the Commonwealth, and not by any and every volunteer, who may choose to interfere. But this is a very different thing from the attempt to coerce a corporation to perform that which by its charter it has no authority to undertake to do, or that which is in excess of its authority; which, to that extent, is the same thing.

The answer to the argument on this portion of the case is, that the legislature did authorize this railroad company so to contract. So far as this is true, and it must be granted that it is, to a certain extent, the answer is complete. In the presence of express authority, the transaction is not to be regarded as obnoxious to public or good policy, or to be set aside because foolish and unwise. Nor is such a provision in conflict with any constitutional prohibition against the grant of such authority. Let us see to what extent the power exists in this case.

By the Act of the 18th of April 1843, the counties of Allegheny, Westmoreland, Fayette and Somerset, and any city, borough or incorporated company were authorized to subscribe to the stock of the Pittsburg and Connellsville Railroad Company as fully as individuals could do; and by an act passed just ten years thereafter, on the 18th April 1853, the several counties authorized to subscribe, were further empowered to borrow money on an issue of bonds bearing interest at the rate of six per cent. per annum; and also, with authority to the company to receive such bonds in payment of stock. On the 29th of June of the same year, pursuant to a proposition submitted by the county on the 8th of the month, the county perfected its subscription for fifteen thousand shares of the stock of the company, the latter accepting the county bonds issued pursuant to the Act of Assembly, and agreeing with the county to pay interest on the stock half yearly for thirty years, in New York, at the same time and place the coupons attached to the county bonds were payable to the holders of the bonds. The bonds and stock were accordingly issued and delivered to the respective contracting parties, and the contract completed.

Previously to this, on the 12th of April 1853, the legislature authorized the railroad company " to pay to the shareholders entitled to receive the same, interest at the rate of six per cent. per annum, on all instalments paid by them, which interest shall be charged to the cost of construction; and continue to pay the same *until the road shall be completed;*" and that until the period for

[Pittsburg and Connellsville Railroad Co. *v.* County of Allegheny.]

which a dividend shall be declared, all the profits and earnings of the road shall be credited to the cost of construction. "Provided, that no stockholder who shall neglect to pay up instalments as called for, shall be entitled to receive interest on the same: And provided further, that the stock of said company shall not be subject to any tax in consequence of the payment of interest hereby authorized."

The quotation of these provisions thus largely not only exhibits the authority to the company to contract for the payment of interest on stock, but shows that these are general provisions not limited to the cities and boroughs authorized to subscribe by the first and preceding section of the act, from which the quotation is made, as was insisted on by the able and learned counsel for the plaintiff in error. If the provision for paying interest applied only to subscriptions " entitled to it" *in præsenti*, as it was argued, it is, I think, certain that it did not cover the case of any municipal subscriptions; for no contract existed for any on the terms of paying interest at that time;—at least this seems to have been the case. Indeed, strictly speaking, none could have been entitled, unless it may have been certain townships in Somerset county, authorized by the Act of 31st March 1853, " to subscribe to the stock of the road and pay in bonds, which the company was authorized to receive on the condition that the interest due thereon shall be paid by said company until the road shall be completed." But the act was not needed for them; nor is it likely that those townships had made their subscriptions and issued their bonds in the interval of twelve days between the date of these two acts. In addition to the consideration that the provisions of the section quoted are general and apply to matters concerning the company and its stockholders, not contained in the first section, the words used are entirely susceptible of general application without regard to when the subscription should be made. The company " are hereby authorized to pay to the shareholders entitled, interest," &c. It is not that it shall pay interest to shareholders who are now entitled, or who shall become entitled, but to shareholders *entitled*, past, present or future. This must be the construction of these words, or they will be without any effect; certainly as to the county of Allegheny, for she did not subscribe until afterwards; yet we find that the company and county both acquiesced in its applicability;—the former by paying the interest, and the latter by giving credit for it up until the 1st of January 1858. It will hardly do to assume that they may have supposed that there was power enough in the company to make such a contract without legislative authority; for both were aware that the legislature thought differently, by the passage of the two acts referred to, authorizing the payment of interest, one of which they were specially acting under. We think the words employed act upon retrospective as well as on

prospective subscriptions.   So holding, we give effect to a uniform rule on the subject, and escape the injustice of a partial one, which would exclude stock not subscribed and paid for at the date of the act.

This view of the Act of 13th April 1853 simplifies the controversy.   The authority to pay interest is coupled with and inseparable from a period fixed in the act during which it should continue.   That time is clearly defined by the words "until the completion of the road."   These words qualify and limit the power to contract for interest; and are of the same binding force as those which authorize the company to pay interest.   The company could contract so far by virtue of the authority given; beyond that the contract is *ultrà vires*.

The next inquiry is, what constituted the Pittsburg and Connellsville Railroad Company at the date of this enactment, and when the contract of subscription was entered into?   The charter must answer that question.   The act of incorporation is plain. The company was incorporated by an act passed the 3d of April 1837, and authorized to build a railroad between the city of Pittsburg, in Allegheny county, and Connellsville, in Fayette county. These were the termini of the road fixed by the act.   Several supplements have since been passed, authorizing the company to extend their road east of Connellsville, and one of them authorizing its extension west of Pittsburg, but was subsequently repealed.

By the Act of the 18th April 1843, it was authorized to extend eastwardly to Smithfield, or to any other point on the waters of the Youghiogheny, within the limits of this Commonwealth; and by an Act of April 18th 1853, this privilege was enlarged by an authority to extend the road indefinitely to the counties of Somerset and Bedford, and afterwards by an Act of the 14th April 1863, the privilege was enlarged and extended to Franklin and Fulton counties.   There were other projected connections, and authority granted to the company in respect to them, but it is not necessary more specially to notice them.   In 1857 a final location of the road eastwardly from Connellsville to its present contemplated terminus on the south-eastern boundary of Bedford county, was made, and the survey adopted, and filed in the office of the Secretary of the Commonwealth.

These several grants of the right of extension to the company, were but privileges, and so denominated in The Commonwealth *v.* The Pittsburg and Connellsville Railroad Company, 8 P. F. Smith 26; which might be accepted and acted on at the option of the company, and were not enforceable against the company by the Commonwealth, as the original undertaking might have been. They are noticed here, however, only as being supposed to have a bearing on the limitation in the Act of 12th April 1853, fixing a time during which the company had authority to contract for

the payment of interest on stock. The limitation is very explicit, viz., "until the same shall be completed;" that is, the road mentioned in the preceding section of the act,—"The Pittsburg and Connellsville Road." Between these points but little had been accomplished at the date of the act, towards completing the road. Hopes were low of getting there at all, much less of going further. There is therefore no implication in the circumstances of the road that anything was intended in the act but the completion of the original project, and certainly the words used do not point to anything else. To this, we think, the limitation was intended to apply, and not to projects which the company might or might not attempt. If we are accurate in this, the right to contract for interest would be limited to October 1861, or at whatever time the road was finished to Connellsville. We do not speak with certainty as to the time; for it is a view that neither side discussed much; lest, perhaps, on the one hand, it might look like a concession of liability to that extent, and on the other, that it might seem an admission that a recovery to that extent might be satisfactory. This construction gives to the limitation certainty, and that we must suppose was intended by the legislature; otherwise, it would in effect be no limitation at all; the words meaning almost nothing. We are, therefore, of opinion that the contract of the company extended only to paying interest on account of the Allegheny county subscription until the road was finally completed from Pittsburg to Connellsville, and to that extent, including interest on overdue coupons, the plaintiff may recover and ought to have recovered.

The defence resists a recovery even to this extent on two grounds, viz., the Statute of Limitations and the marshal's sale of the plaintiff's stock.

We think neither tenable. The agreement of the company is under seal. True, it is incorporated into the special certificates of stock issued to the county. But what matters that? Any difficulty of proving it is no objection. The fact exists, and that is enough. It is upon this contract, so evidenced, that the county has proceeded. There is no other contract between the county and the company. It was supposed the county would retain the stock, and thus held, the evidence of the contract would always be in her possession; but because she did not choose to do so, she cannot be denied the right to show the contract by any legal evidence. We think the Statute of Limitations has not the effect contended for of defeating the plaintiff's right of recovery to the extent indicated, as the contract is under the seal of the company.

The marshal's sale passed the stock as stock to the purchaser, but not the right to interest. The tenor of the contract gives no countenance to more. It was special, and directly with the

[Pittsburg and Connellsville Railroad Co. *v.* County of Allegheny.]

county, in relief of her obligation to pay interest. The words of the stipulation are to pay interest " semi-annually on the first days of July and January, in the city of New York, by applying the same to the semi-annual interest coming due on the bonds so issued by the county aforesaid, and payable the same days to the holders of the said bonds." Argument could not aid in elucidating that which is so plain as this stipulation. The purchaser got by his bid the stock proper; but the collateral contract did not pass to him. Nor had he any power to enforce or release it: 8 Watts 361; 21 Pick. 140; 16 Johns. 99; 4 Id. 476; 3 Penna. Rep. 18.

I have thrown out of the case the guaranty by the company of these county bonds. It was made after the bonds had been delivered, and there was neither consideration for, nor authority to make it. Nor is it declared on.

We think the *narr.* so far sufficient that the objectionable portions of it in the second count, would be considered as amended, being amendable. But before another trial, the objectionable portions should be exscinded. There are sound counts in the *narr.* on which the judgment might have been entered.

These views, it will be seen, establish error on part of the court in regard to the extent of the plaintiff's right to recover, and in not charging in answer to points on the subject that the contract for interest was good only to the extent we have indicated, and invalid, as to the excess not covered by the Act of 12th of April 1853, authorizing the payment of interest; in other words, that the contract was invalid for the payment of interest after the completion of the road from Pittsburg to Connellsville. If there be error in any of the assignments not specially noticed, it is immaterial because of the view we have taken of the case, and we need not trouble ourselves with them. As to the Statute of Limitations, and the effect of the marshal's sale of the stock of the county, in the road of the plaintiff in error, no error was committed; nor any in holding that the form of action was proper, or in refusing to arrest the judgment; but for the reasons given, the judgment must be reversed.

Judgment reversed, and *venire de novo* awarded.