BARBER v. BRUNDAGE et al.

(Supreme Court, Appellate Division, Fourth Department.   March 21, 1900.)

DESCENT—LIFE ESTATE—REVERSIONS—INHERITANCE—ESTATES IN EXPECTANCY.
   Decedent, who died intestate, seised of real estate, left no widow, and his only heirs were his mother, brothers, and sister.  His mother held seisin until her death, prior to which time the brothers and sister died, leaving issue surviving their grandmother.  Rev. St. pt. 2, c. 2, § 6, provides that, if an intestate die without descendants, leaving no father, or a father not entitled to take the inheritance, and leaving a mother, and brother or sister, or a descendant of brother or sister, the life estate shall pass to the mother, and the reversion to living brothers and sisters and the descendants of such as are dead.  Section 28 provides that whenever in the preceding sections any person was described as living it shall be understood that he was living at the time of the death of the intestate from whom the descent came.  *Held*, that the reversion to the brothers and sister vested immediately on intestate's death, and descended per stirpes to the heirs of their respective parents.

Appeal from special term, Steuben county.

Action by Carrie G. Barber against Fannie S. Brundage, impleaded with others.  From a judgment for plaintiff, defendant Fannie S. Brundage appeals.  Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

J. W. Russell, for appellant.
John F. Parkhurst, for respondent.

LAUGHLIN, J.   The action was brought for the partition of a tract of land consisting of about 300 acres, which Monroe Brundage owned at the time of his death, in 1875.   He left no will or widow, and his only heirs were his mother, Sarah Brundage, two brothers, Franklin and Grattan H. Brundage, and one sister, Eliza Nellis. Upon the death of the intestate, his mother entered and remained in possession of the premises until her death, in January, 1899.   In the meantime the brothers and sisters had died leaving issue who survived their grandmother, the life tenant.   The sole question presented by this appeal is whether an undivided third of the reversion vested in each brother and sister of Monroe Brundage upon his death, or whether such reversion was suspended during the life of his mother, and then, at her death, vested in the several nephews and nieces of Monroe Brundage per capita, as his heirs, and not per stirpes, as the heirs of their respective parents.   If the reversion vested immediately, the judgment awarded by the trial court is correct, and should be affirmed; but, if not, it is erroneous, and must be reversed.

At common law, where there was no actual seisin in the heir, the descent was suspended during the existence of an outstanding life estate, and the interest or estate of the heir was inchoate, depend-

ing on his surviving the life tenant. Jackson v. Hilton, 16 Johns. 96; Jackson v. Hendricks, 3 Johns. Cas. 214; Vanderheyden v. Crandall, 2 Denio, 9.

Section 6 of chapter 2 of part 2 of the Revised Statutes (1 Rev. St. p. 752), as originally enacted and in force in 1875, and which, therefore, governed the descent of the real property of Monroe Brundage, provided as follows:

"If the intestate shall die without descendants and leaving no father, or leaving a father not entitled to take the inheritance under the last preceding section, and leaving a mother and a brother or sister, or the descendant of a brother or sister, then the inheritance shall descend to the mother during her life, and the reversion to such brothers and sisters of the intestate as may be living, and the descendants of such as may be dead, according to the same law of inheritance hereinafter provided. If the intestate in such case shall have no brother or sister, the inheritance shall descend to the mother in fee."

We are aided in the construction of this section by section 28 of the same chapter (1 Rev. St. p. 755), which reads as follows:

"Whenever in the preceding sections, any person is described as living, it shall be understood that he was living at the time of the death of the intestate, from whom the descent came; and whenever any person is described as having died, it shall be understood, that he died before such intestate."

Section 27 of the same chapter (1 Rev. St. p. 754) defines "real estate," the descent of which is provided for and regulated by that chapter, as follows:

"The term 'real estate' as used in this chapter shall be construed to include every estate, interest and right, legal and equitable, in lands, tenements and hereditaments, except such as are determined or distinguished by the death of an intestate, seised or possessed thereof, or in any manner entitled thereto, and except leases for years, and estates for the life of any other person; and the term 'inheritance' as used in this chapter shall be understood to mean real estate, as herein defined, descended according to the provisions of this chapter."

Blackstone (book 4, p. 175) says:

"An estate in reversion is the residue of an estate left in the grantor to commence in possession after the determination of some particular estate granted out by him. Sir Edward Coke describes a reversion to be the returning of land to the grantor or his heirs after the grant is over. As, if there be a gift in tail, the reversion of the fee is, without any special reservation, vested in the donor by act of law; and so, also, the reversion, after an estate for life, years, or at will, continues in the lessor; for the fee simple of all lands must abide somewhere, and if he who was before possessed of the whole carves out of it any small estate, and grants it away, whatever is not so granted remains in him."

The term "reversion" is not defined in the chapter of the Revised Statutes relating to descent, but in section 12, tit. 2, c. 1, pt. 2, Rev. St. (1 Rev. St. p. 723), the first part of the common-law definition given by Blackstone is adopted, and made applicable to grants and devises.

Chancellor Kent says (volume 4, pp. 354, 355):

"The reversion arises by operation of law, and not by deed or will, and is a vested interest or estate, inasmuch as the person entitled to it has a fixed right of future enjoyment. It is an incorporeal hereditament, and may be conveyed, either in whole or in part, by grant, without livery of seisin. * * * The reversioner, having a vested interest in the reversion, is entitled to an action for an injury done to the inheritance."

By the Revised Statutes, reversions were expressly included in estates in expectancy, which were made "descendible, devisable and

alienable in the same manner as estates in possession." 1 Rev. St. pp. 722, 723, §§ 7–9; Savage v. Pike, 45 Barb. 464; Griffin v. Shepard, 40 Hun, 355; Pickert v. Windecker, 73 Hun, 476, 26 N. Y. Supp. 437. The law favors the vesting of estates. Byrnes v. Stilwell, 103 N. Y. 453, 9 N. E. 241; Moore v. Littel, 41 N. Y. 66; Lawrence v. Bayard, 7 Paige, 70.

We think it has been the understanding of the legal profession, of the courts, and of text writers that the Revised Statutes not only abolish the rule of primogeniture, and provide for lineal and collateral descent in equal shares to heirs of equal degree, but also the rule of the common law as to the suspension of the reversion during the existence of an outstanding life estate, and the intention of the legislature, as shown by section 28, seems plain, and the fair construction of the statute is that the reversion vests immediately in the reversioners. 3 Washb. Real Prop. § 410; Hil. Real Prop. (4th Ed.) 314; Fowler, Real Prop. 611–621; 4 Kent, Comm. 385–388; Wheeler v. Clutterbuck, 52 N. Y. 71; Manolt v. Petrie, 65 How. Prac. 206; Blakeley v. Calder, 15 N. Y. 623; Jenkins v. Fahey, 73 N. Y. 362; Hennessy v. Patterson, 85 N. Y. 100; Dodge v. Stevens, 105 N. Y. 588, 12 N. E. 759; Griffin v. Shepard, 124 N. Y. 70, 26 N. E. 339; Clark v. Camman, 160 N. Y. 328, 329, 54 N. E. 709.

Our conclusion is that, upon the death of Monroe Brundage, the reversion at once vested in his brothers and sister, and that it was devisable, descendible, and alienable during the existence of the outstanding life estate in their mother.

The argument of the appellant's counsel is founded upon the inartistic, if not inaccurate, designation in the Revised Statutes of the life estate as an estate of inheritance, and upon the failure of the revisers in their notes to specifically state, as they did in other instances where the common law was changed, that it was the intention to have the reversion vest notwithstanding the want of actual seisin in the reversioner. The insertion of the clause where the word "inheritance" is employed, to describe the life estate, was made in the legislature, and not by the revisers. The persistency with which the point was argued and the elaborate briefs presented, showing exhaustive research, seemed to demand a statement of our views, although the proposition is plain, and this, doubtless, accounts for the lack of precedents that are exactly in point.

The judgment appealed from should be affirmed, with costs to the respondent. All concur.