(June 3, 1911.)'

## OLSON BROS. et al., Respondents, v. CHARLES H. HURD et al., Appellants.

[116 Pac. 358.]

SUFFICIENCY OF PLEADING — WARRANTY OF STALLION — BREACH OF WARRANTY—ACTION ON WARRANTY—REAL PARTY IN INTEREST—NOTICE.

(Syllabus by the court.)

1.  Where a complaint alleges that "the plaintiffs purchased of the defendant" an animal "for the sum of $1,600," the complaint is not open to demurrer on the ground that such an allegation is not equivalent to alleging that the plaintiff paid $1,600 for the animal so purchased.

2.  Where O. and others purchased a stallion and at the same time received from the vendor a contract of warranty, and thereafter and before using him sold the animal without assigning the contract of warranty to the purchaser, but at the same time made the same warranties to the purchasers as they had received from the original vendor, *held,* that O. and others may sue on the contract of warranty as the real parties in interest.

3.  Where a contract of warranty given on the sale of a stallion provides that in the event the animal fails to come up to the requirements of the warranty as a foal-getter, the purchaser shall give notice to the vendor on or before the first day of January following at a specified place, *held,* that a personal notice given by word of mouth at some other place prior to the date limit fixed in the contract is a sufficient and substantial compliance with the contract as to notice, and that the essence of such a stipulation is notice to the vendor, and that the place and manner of giving the notice is a mere incident to the notice itself.

APPEAL from the District Court of the Fifth Judicial District, for the County of Bear Lake. Hon. Alfred Budge, Judge.

Action by plaintiffs to recover damages for breach of contract of warranty. Judgment for the plaintiff and defendants appeal. *Affirmed.*

T.. L. Glenn, for Appellants.

"It was the rule of the common law, and the same has remained unchanged by the code, that in actions for the benefit of the partnership, all the parties must be joined as parties to the action; it cannot be maintained in the name of one although he is the general agent of the firm." (Estee's Pleading, 3d ed., p. 73, sec. 142, and authorities cited; 17 Am. & Eng. Ency. of Law, 1236; 6 Current Law, 931, sec. 6, note 96; 30 Cyc. 561, note 21.)

Associations and defective corporations are a common partnership. (17 Am. & Eng. Ency. of Law, 863.)

The Belgian Horse Company is the only real party in interest, and plaintiffs have no individual interest in said property and are not, therefore, the real parties in interest, and this action is contrary to sec. 4090, Rev. Codes, and the judgment herein should be set aside and the action dismissed. (Estee's Pleading, 3d ed., sec. 130.)

A. B. Gough, for Respondents.

Even if the evidence disclosed that the respondents acted as trustees for the Belgian Horse Company in acquiring the horse and bond, as appellants now contend, they would be permitted to maintain this action in their own names, being trustees of an express trust under sec. 4092, Rev. Codes. (Deering's Cal. C. C. P., sec. 369.) And it was not necessary to allege or prove that they were suing as trustees. (*Walker v. McCusker,* 71 Cal. 594, 12 Pac. 723.)

AILSHIE, Presiding J.—This action was commenced by Chris Olson, James A. Olson and Orson Olson, as partners doing business under the firm name and style of Olson Bros., and one Isaac Johnson, as plaintiffs, against the defendants and appellants herein, to recover damages upon a contract of warranty and guaranty which had previously been executed by the defendants in favor of the plaintiffs. The defendant Hurd sold plaintiffs a registered stallion for the sum of about $1,600, and at the time of making the same gave the plain-

tiffs a contract of warranty. The animal proved to be one of inferior grade, and did not come up to the requirements of the warranty and, as appears from the evidence, proved to be practically worthless except as a work-horse; and plaintiffs instituted this action to recover damages sustained by reason of the breach of contract. The defendants Strong and Alley signed the contract as sureties. The plaintiffs recovered judgment for the sum of $800, and defendants moved for a new trial and their motion was denied, and they thereupon prosecuted this appeal from the judgment and the order denying their motion.

Defendants demurred to the complaint and now complain of the action of the court in overruling the demurrer. In paragraph 2 of the complaint, the plaintiff alleged that "on the 10th day of July, 1908, the plaintiffs purchased of the defendant Charles H. Hurd one stallion, named Handy Jack, registered No. 2573 in the registry of the American Association of importers and breeders of Belgian Draft Horses, for the sum of $1,600," etc. The appellants now insist that the allegation that the purchase was made for the sum of $1,600 is unintelligible and uncertain, in that it does not amount to an allegation that the plaintiffs paid that sum for the animal. We do not think there is any merit in this contention. The allegation that the plaintiffs purchased of defendant the animal for the sum of $1,600 implies that they paid that sum for the animal and that $1,600 was the purchase price.

Appellants next contend that the contract sued upon and the contract proven, and on which verdict and judgment were rendered and entered, are different and separate contracts. This contention is predicated upon the proposition that the plaintiffs sued on a contract for the purchase of a horse by the plaintiffs at the price of $1,600, and that the evidence disclosed a purchase for a lesser sum by the plaintiffs and other parties who afterward composed the Belgian Horse Co. We have carefully examined the evidence, and while it contains considerable conflict and is surrounded with more or less ambiguity and uncertainty, it seems to us that it was sufficient

to justify the jury in concluding, as a matter of fact, that Hurd sold the horse to Olson Bros: and Johnson and gave to them the contract of warranty. It also shows that they subsequently organized a company known as the Belgian Horse Co. and sold stock to the different shareholders in that company. This latter transaction, however, was separate and independent from the original transaction, whereby the Olson Bros. and Johnson purchased the animal from the defendant and appellant Hurd.

A number of errors have been assigned which revolve about the one main and vital question presented in this case, and that is as to whether or not the action has been prosecuted by the real parties in interest. As previously stated, the appellants gave to plaintiffs at the time of the sale of the animal a contract of warranty and guaranty. That contract ran to the plaintiffs herein personally. The principal parts of that contract upon which this action is predicated are as follows:

"The said Chas. H. Hurd in the selling of said stallion 'Handy Jack' to said Olson Bros. and Johnson has guaranteed and does guarantee to the buyers that said stallion will prove a 65 per cent foal-getter, and that he is a registered stallion as herein set forth, and that the said Hurd is the owner of and entitled to sell and dispose of said stallion, 'Handy Jack'; the said Chas. H. Hurd also agrees and guarantees that if the said stallion, 'Handy Jack,' does not prove to be a 65 per cent foal-getter, that the said Chas. H. Hurd will replace said stallion, 'Handy Jack' with another stallion equally as good and of equal value as 'Handy Jack,' and said substitute shall be registered in the same registry as the said 'Handy Jack.' . . . . The said Chas. H. Hurd further guarantees under this bond that any substituted horse shall be guaranteed to prove a 65 per cent foal-getter. And it is further agreed that in the event a substitution shall be asked or required in order to fulfill the guarantee of said Hurd, then the said substituted horse shall be delivered to said Olson Bros. and Johnson, not later than March 1, 1910. It is understood that said Olson Bros. and Johnson shall take good care of said stallion."

The action was prosecuted for a breach of the foregoing provisions of the contract. It was alleged and satisfactorily proven that the horse was practically worthless as a foalgetter, and that instead of coming up to the 65 per cent guaranty contained in the contract, the percentage of successful impregnations was in fact less than thirty, and the witnesses who qualified as competent to testify concerning the breeding and raising of livestock testified that a stallion which would not get over 30 per cent of the mares served with foal is of no practical value whatever for breeding purposes and that his only value would be what he is worth as a work-horse. These allegations of the complaint were quite fully and satisfactorily established by the proofs, and it also appears that the vendor Hurd failed and refused to furnish another animal which would come up to the requirements of the guaranty. The contention is now urged that since the original purchasers to whom the contract of warranty and guaranty was made sold and transferred the animal to the company of which they were members, they thereby necessarily transferred the contract, and that they are no longer the parties in interest and cannot maintain the action. The evidence on this point is very unsatisfactory, and is surrounded with some doubt and uncertainty. It is quite clear, however, that the contract was never assigned to the Belgian Horse Co., nor was it assigned to the stockholders in the company. Most, if not all, of the stockholders testified in the case, and they quite generally agree that Olson Bros. and Johnson told them at the time the company was organized that they had a bond from Hurd and of the terms and conditions of that contract, and that they were protected by the bond. They also agree that Olson Bros. and Johnson told the members of the company that they (the respondents) "would see that they were protected." Several of the stockholders testified that they looked to Olson Bros. and Johnson to make good the guaranty and for their protection, and that they did not look to Hurd on the bond. A careful examination of the evidence of the several parties on this point discloses the fact that the members of this association depended on one of two things: Either that they would

have their right of action against Olson Bros. and Johnson for any failure of the animal to come up to the requirements of the guaranty and representation, or else that they expected Olson Bros. and Johnson to prosecute any action which might be necessary in order to protect the members of the association and to do so for their use and benefit. So in the final outcome of the matter, they looked to Olson Bros. and Johnson for their protection under the guaranty, and did not look directly to Hurd, the original vendor and guarantor of the horse. On the other hand, Hurd and his sureties had made their contract of warranty and guaranty directly with the respondents herein, and they wholly failed upon the trial to show that that obligation was held by anyone else or that they owed any obligation or liability on that contract to anyone other than the respondents herein. For these reasons, we do not think the assignments of error touching this phase of the case are well taken. In this connection, however, it is urged by counsel for appellants that the respondents could not maintain their action on this contract, for the reason that they have sold the animal which the contract warranted, and that they are therefore not in a position to comply with their part of the contract in returning the animal in exchange for one that will meet the requirements of the warranty. This would or would not defeat the right of recovery as the facts might appear in the particular case. If, however, the respondents parted with all their interest in the animal prior to using him and testing his power of procreation, and did not reserve the same right in their contract with the purchaser that is contained in the contract they held from the appellants to enable them to return the animal in the event there is a breach of the warranty, those facts would constitute a defense, and it would have been incumbent on the appellants to show such facts in defense of the action and as a bar to the respondents' right of recovery. If respondents are not liable to their vendees for breach of any warranty made by them on the sale of the animal, they certainly could not be damaged by reason of any breach of the naked warranty made to them

where they were not the owners of the animal at the time of the breach.

The appellant also complains of the manner of giving notice of the breach of warranty and the defects in the animal. The contract of warranty provided that the purchaser should give notice to Hurd at Moulton, Iowa, not later than January 1, 1910. It appears that Hurd was in Bear Lake county in the vicinity of Montpelier, where most of the respondents resided, from time to time until the latter part of December, 1909, and that respondents gave him oral notice at least a couple of times prior to the first of January. The written notice, however, was not sent to Hurd at Moulton, Iowa, until after the first of January, 1910. It is now contended that the contract contemplated a written notice, and that no written notice was given until after the first of January, and for that reason appellants are not liable. This contention is without merit. In the first place, the contract does not provide for a written notice. It simply provides for notice, and an oral notice would answer the requirements of the contract. On the other hand, the contract evidently provided for the giving of notice at Moulton, Iowa, in order to have a fixed and definite place to which a notice might be directed. The appellant Hurd was dealing in imported stock, and was evidently going from one part of the country to another, so that his whereabouts at any particular time might be a matter of speculation. There could be no speculation, however, about it when he was personally present in Montpelier, and a personal notice given by word of mouth would certainly answer every requirement of the contract. The thing that the contract was specially providing for was notice. That was the essence of the requirement. The place where the notice should be given was only an incident in the giving of notice, and the contract did not undertake to specify the manner of giving the notice, whether it should be in writing or otherwise.

While we have not dealt with the assignments of error separately or in detail, the foregoing consideration of the question disposes of all the points urged, and leads to an affirmance of the judgment.

But little contention is made on the real merits of the case. It is practically admitted that the horse in question did not come up to the standard of the warranty, and it would seem that there is no escaping judgment for the damages sustained on account of the breach of this contract. No error is disclosed which would require or justify a reversal of the judgment.

The judgment should be affirmed, and it is so ordered, with costs in favor of the respondents.

Sullivan, J., concurs.

Petition for rehearing denied.