SHIPLEY et al. v. PITTSBURGH & L. E. R. CO.

Civil Action No. 5586.

District Court, W. D. Pennsylvania.

Sept. 18, 1946.

Alexander Unkovic, and Kountz, Fry, Staley & Meyer, by Austin L. Staley, all of Pittsburgh, Pa., for plaintiffs.

Reed, Smith, Shaw & McClay, by James R. Orr, all of Pittsburgh, Pa., for defendant.

GOURLEY, District Judge.

This is an action filed in the first instance by twenty-four (24) named plaintiffs against the Pittsburgh and Lake Erie Railroad Company, each of whom were employees of said Company, a Pennsylvania corporation. Said action is based under a written contract for services performed beyond their ordinary and routine responsibilities, and for such services they claim to be entitled to extra compensation under the provisions of the aforesaid contract, and a recognized universal custom which existed at the time the contract was executed and the services performed.

It is set forth in the complaint that said extra services were performed in the coupling of air or steam hose, or in the chaining and unchaining of cars, but the cause of action which was based on the chaining and the unchaining of cars was withdrawn by the plaintiffs and an Order of Court has been duly signed which limits the right of recovery, if any, to the coupling of air or steam hose.

In the action filed by the twenty-four (24) original plaintiffs against the defendant, as is disclosed by the complaint, a diversity of citizenship is alleged and each of the original plaintiffs has a claim in excess of $3,000. It is furthermore set forth that there is a common question of law or fact affecting the several rights of approximately one hundred fifty (150) employees of the Defendant Company. It is further set forth that a common relief is sought by each of the plaintiffs, to wit, a right of recovery for services performed which were not required by the contract executed with the defendant, and for which the plaintiffs are entitled to recovery on the

basis of a nation-wide established, habitual and customary practice among railroads and their employees.

Subsequent to the filing of said complaint, fifty-eight (58) additional named plaintiffs filed a motion for leave to intervene as party plaintiffs, in which it is set forth that each of said intervenors had been an employee of the Defendant Company during the period of time referred to in the complaint, and that each of them has a question of law or a question of fact in common with all of the plaintiffs who were parties in the original complaint. Although none of the plaintiffs in the motion to intervene satisfy the jurisdictional requirements of both diversity of citizenship and a claim in excess of $3,000, exclusive of interest and costs, the basis for the allowance of intervention is premised on the provisions of Rules 23 and 24 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

In addition thereto, the defendant has moved the Court to require the plaintiffs to submit a bill of particulars with respect to the plaintiffs' original complaint, and more particularly with respect to matters involving the dates and times when and where the plaintiffs performed the coupling of air or steam hose for which they are seeking compensation. Each of the questions has been duly argued before the Court, briefs have been presented, and a careful consideration and review has been given by the Court to the matters presented at argument and the various authorities cited in the respective briefs.

■ The Court will first consider the motion filed by the defendant for a bill of particulars. In connection therewith, it is only necessary to make brief comment.

This is true for at the time of argument the defendant requested that counsel for the plaintiffs make available such informattion as they have, or which they might be able to reasonably secure from each of the plaintiffs, as to the nature or extent of the employment of each of said plaintiffs which gives rise to the cause of action set forth in the complaint. Counsel for the plaintiffs expressed their willingness to make available such information which the Court believed proper and which it, therefore, directed. Although the records of the Defendant Company would show in detail the nature of the employment of each of the plaintiffs and the services performed during the period of time set forth in the complaint, it was believed that the defendant was entitled to any knowledge or information which any of the plaintiffs might have as to when the services were performed generally upon which the cause of action would be based. Fleming v. Smoot Sand & Gravel Corp., D.C., 41 F.Supp. 330.

An appropriate order will, therefore, be filed by the Court in connection with the motion for a bill of particulars.

■ The next question before the Court for consideration is more involved, and generally is expressed as follows: Where a class action has been filed, in which jurisdiction is based on the diversity of citizenship and amount involved being in excess of $3,000, does the Court have jurisdiction to permit the intervention of other claimants in the class as new plaintiffs under the provisions of Rules 23(a) Paragraph (3) and 24(b) of the Federal Rules of Civil Procedure, although there is no diversity of citizenship between the intervenors and the defendant, and the intervenors' claims are less than $3,000 in each instance?

It is first essential to refer to the Federal Rules of Civil Procedure which are involved herein.

"Rule 23. Class Actions.

"(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) * * *

"(2) * * *

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

"Rule 24. Intervention. * * *

"(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a

statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

It must first be borne in mind that the Federal Rules of Civil Procedure do not either extend or limit the jurisdiction or venue of the Federal Courts.

"Rule 82. Jurisdiction and Venue Unaffected.

"These rules shall not be construed to extend or limit the jurisdiction of the district courts of the United States or the venue of actions therein."

Each of the plaintiffs involved in this proceeding has a common question of law as to whether or not the contract executed with the defendant is subject to the custom, or established and habitual practice, upon which it is claimed that the right of recovery exists. However, each of the plaintiffs allege that certain services were performed for the defendant which were not required during the period, to wit, beginning on the date which immediately precedes by six (6) years the date of the filing of this action, April 10, 1946, and ending December 1, 1944. It is apparent that some of the plaintiffs might be found to have performed the services complained of, and others may not be able, for one reason or another, to establish or prove that the services were performed and, therefore, no right of recovery might exist.

■ It would, therefore, appear that the rights of the individual plaintiffs and the persons who desired to intervene are separate causes of action, and they have no right to a common fund or to common property, but each case would rest on its individual facts as to recovery and the amount thereof from a factual standpoint. As a result thereof, even if the legal question as to whether or not the contract can be modified or abrogated, as a result of the custom which exists would be interpreted favorably as contended by the plaintiffs, each of the plaintiffs would be obligated to prove that said services were performed in each instance, and the periods of time when performed, and it is, therefore, apparent that one of the plaintiffs may be able to support his claim and another plaintiff may not. It, therefore, appears to me that although there is a joint or common interest on the part of the plaintiffs in one part of the subject matter or from a legal standpoint, there is not a joint and common interest in another part of the controversy or from a factual standpoint. It is a definite and general rule that when several plaintiffs assert separate and distinct claims in a single suit, the amount involved in each separate controversy must be of the requisite amount to be within the jurisdiction of a district court, and those amounts cannot be added together to satisfy juridictional requirements. Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817; Grand Rapids Furniture Co. et al. v. Grand Rapids Furniture Co., 7 Cir., 127 F.2d 245; Clark et al. v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001.

■ It is the policy of Congress to have citizens of different states settle their disputes in state courts unless the matter in controversy exceeds the sum of $3,000, or unless the matter involves a federal statute, and this same rule has application between citizens who reside in the same state. This rule is only subject to modification when the plaintiffs unite to enforce a single title or right in which they have a common, undivided interest, both as to law and facts, and, in such event, it is enough if their interests collectively equal the jurisdictional amount. Sturgeon v. Great Lakes Steel Corp., 6 Cir., 143 F.2d 819; Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248; Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001; Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111.

Counsel representing the plaintiffs have referred to various authorities, all of which have been read with considerable care and caution, and I do not believe that they govern the question involved herein. Under the allegations which appear in the complaint, it could not be held that the plaintiffs have a common and undivided interest in each of the problems which exist

both as to law and facts. To reiterate, each of the plaintiffs have a common and equal interest in the problem as to whether or not, under the terms and provisions of their contract, a right of recovery exists, which is a question of law, but they certainly do not have a common and undivided interest to any particular fund since one of the plaintiffs may be entitled to recovery and another may not, depending on the ability of each plaintiff to establish and prove that certain services were performed, the time of performance and that payment has not been made to that employee for said services, and this is clearly a factual question.

I, therefore, do not believe it would be proper to permit the intervention of the plaintiffs desired on the basis of the theory expounded by the plaintiffs since each of the plaintiffs had separate and distinct causes of action if the question of law is decided generally in favor of all the plaintiffs. There is not a common and undivided interest existing as to the ultimate recovery, and each of the claims of the intervenors do not contain the requisite amount of $3,000 or such diversity of citizenship as would justify the Court in finding that jurisdiction would exist. Although it would be convenient to adjudicate the similar questions which exist, as far as the intervenors are concerned, as long as the federal courts are courts of limited jurisdiction, it does not seem reasonable to throw additional burdens on already crowded federal dockets merely because controversies normally without their jurisdiction are similar or identical in some questions of law or fact in the case properly before the federal court. In this case there is no question in the mind of the Court that the claims of the intervenors could not have originally been filed in the federal court on the basis of diversity of citizenship and jurisdictional amount, and the purpose of permitting intervention is to facilitate federal practice and not to reduce litigation in the state courts.

■ However, the question of jurisdiction is always open for the consideration of the Court, and I believe it proper for the Court to consider whether or not the petition to intervene should be allowed under any other basic principle of law, or by a statute of the United States. Black & Yates v. Mahogany Association, Inc., 3 Cir., 129 F.2d 227, 236, 148 A.L.R. 841.

■ Under the Judicial Code, 28 U.S. C.A. § 41, subsection (8), it is stated that the district court shall have jurisdiction, inter alia, as follows: "of all suits and proceedings arising under any law regulating commerce." The Railway Labor Act, 45 U.S.C.A. § 151 et seq. provides, inter alia, that the purpose of the act is "for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions"; and "for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." It places upon carriers and employees the duty of exerting every reasonable effort to settle said disputes by agreement, and prohibits the carrier from altering the rates of pay, rules, or working conditions except in the manner provided by the agreement or by the Act. Terminal R. Association v. Brotherhood of Railroad Trainmen et al., 318 U.S. 1, 5, 63 S.Ct. 420, 87 L.Ed. 571.

■ Also the fact that by the Railway Labor Act Congress has indicated its purpose to make negotiation between carrier and employees obligatory in case of industrial controversy, is in itself a declaration of public interest and policy. The power of Congress over interstate commerce extends to such regulations of the relations of rail carriers to their employees as are reasonably calculated to prevent the interruption of interstate commerce by strikes and their attendant disorders. The peaceable settlement of labor controversies that may seriously impair the ability of an interstate carrier to perform its service to the public is a matter of public concern. Virginian R. v. Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789.

■ Jurisdiction of the federal court, under the provisions of the Judicial Code giving federal jurisdiction of actions arising under any "law regulating commerce," is independent of the amount in controversy or diversity of citizenship. The only prerequisite is that the question which exists

must arise under a federal and not under a state law regulating commerce. Young & Jones v. Hiawatha Gin & Mfg. Co., D.C. 17 F.2d 193; Primakow v. Railway Express Agency, D.C., 57 F.Supp. 933; Mulford et al. v. Smith et al., 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092.

The Railway Labor Act is the means which Congress chose to secure the uninterrupted service of interstate railroads and is a federal law which regulates interstate commerce. Virginian R. v. Federation, 300 U.S. 515, 553, 57 S.Ct. 592, 81 L.Ed. 789.

In view of the above statements of law, it is necessary for the Court to decide whether or not the facts which give rise to the original complaint and the petition to intervene are such an outgrowth of a dispute between the defendant and its employees as to justify this Court in granting the petition to intervene on the basis of the provisions in the Judicial Code which grants original jurisdiction of all suits and proceedings arising under any law regulating commerce.

To answer this question reference must be made to the various allegations of fact which are set forth in the complaint and which for the purpose of the motion to intervene must be accepted as true.

In the motion to intervene it is set forth that the intervention is sought with regard to all of the claims set forth in the complaint, and the following paragraphs of the complaint appear relevant in passing on this question:

"IV. At all times during the aforesaid period, each of the plaintiffs has been employed as a trainman under the definition hereinafter set forth by the defendant corporation.

"V. During the said period, the members of the plaintiff class were so employed by the defendant corporation under a written contract, Articles 10 and 11 of which are as follows:

" 'Article 10—General Rules—Definition of Word "Trainmen".

" 'The word "Trainmen" used herein applies to conductors, ticket collectors, flagmen, brakemen, train baggage masters, yard foremen, yard helpers, and switch tenders.'

" 'Article 11—Outside Duties.

" '(a) Trainmen required to tend switches, watch crossings or do any other work outside of their regularly assigned duties will be paid their regular wages, except when filling positions that pay a higher rate they shall receive the higher rate for the full day.

" '(b) Trainmen will not be used to fire engines on outlawed trains tied up by law or for other reasons, or to take charge of engines when engine service employees are available. Where used, they will be paid a minimum of three hours at their regular rates per hour, plus what they would have earned in their regular service.

" 'Coupling Air and Chaining Cars.

" '(c) At points where car inspectors or air inspectors are available, trainmen will not be required to couple air or steam hose.

" '(d) Trainmen will not be required to chain or unchain cars at points where car inspectors are available.'

"The said written contract is in the possession of the defendant corporation, and the contents thereof thus are well known to the defendant."

"VII. At various times during the aforesaid period, the members of said class being trainmen, as aforesaid, in the employ of the defendant, and including the named plaintiffs herein, coupled air or steam hose, on various occasions, at points were car inspectors and air inspectors were available."

"IX. The said acts of the said members of the plaintiff class, in each instance, were done in the course of their employment as trainmen for the defendant corporation, and were required.

"X. The said acts of the said members of the plaintiff class, in each instance, were done at points where car inspectors and air inspectors were available."

"XII. (a) At all times during said period, and at all times relevant to this action, it has been the general, nationwide and established or habitual practice and customary practice and custom among railroads

and employees thereof that a trainman is entitled to additional pay when he performs one or more acts specifically not required by the trainmen's contract with the railroad.

"(b) At all times during said period, and at all times relevant to this action, it has been the general, nationwide and established or habitual practice and customary practice and custom among railroads and trainmen thereof that a trainman is entitled to additional pay for an additional day on each day on which he is required to perform, and does perform, acts which ordinarily are performed by men in a different craft, unless his contract with the railroad fixes a different measure of pay for such performance.

"(c) Those said usages, habitual practices, customary practices and customs have been assented to invariably by the defendant corporation throughout said period, and prior thereto, with regard to other employees and trainmen. Those said usages, habitual practices, customary practices and customs, during said period, and prior thereto, invariably have been recognized and assented to by the defendant corporation with regard to other performances by trainmen employed by the defendant corporation, and by reason of which the parties to said contract at all times considered and believed and intended that said usages, habitual practices, customary practices and customs were a part of said contract.

"XIII. (a) The said acts so performed by the plaintiffs were acts which, by the above quoted provisions of said contract, are acts to be performed by members of a craft other than trainmen.

"(b) In the case at bar, the aforesaid contract is silent as to the amount of additional pay to which the trainman is entitled in payment for such performance.

"(c) The said employment of each member of the class was under the contract aforesaid, and in every respect in which the contract was silent was in accordance with and subject to the established, general and nationwide usages, practices and customs among railroads and employees thereof, and including the usages, practices and customs hereinabove set forth.

"(d) Therefore, by reason of the matters hereinabove set forth, each of the plaintiffs, members of said class, became entitled to additional pay by the defendant corporation for an additional day, on each day in which he performed one or more of the acts set forth in Paragraphs VII, VIII, IX and X hereinabove."

It is, in substance, the contention of the plaintiffs as set forth in the complaint that under the provisions of the trainmen's contract with the defendant, which under the provisions of the law it was required that said contract should be executed in accordance with the Railway Labor Act, it was a general nation-wide and established, or habitual and customary practice to compensate a trainman with additional pay when he performed one or more acts, such as coupling air or steam hose, on the basis of the fees generally paid for said services.

The question of whether or not a recovery may be had for extra work or services outside the contract being performed in connection therewith is dependent on the proper construction of the contract. If the services for which extra compensation is claimed are included, and those for which the agreed compensation is stipulated, no further recovery may be had. On the other hand, recovery may be had for services rendered outside the terms of the contract but, in connection therewith, at the expressed or implied request of the other party. No recovery can be had for extra work unless performed with the knowledge and consent of the other party. 17 C.J.S., Contracts, § 364; 13 C.J. Paragraph 588, Page 585.

A common-law custom is required to be certain and uniform, both as to the persons claiming under it and as to the things claimed. Also a usage or custom of trade must be certain in order to be binding. A custom must be compulsory and not left to each one's option to obey it, and a usage, in order to be regarded as entering into a contract, must be clearly distinguished from mere acts of courtesy or accommodation. 17 C.J. 453, Customs and Usages, Section 11, 25 C.J.S., Customs and Usages, § 5; Sickelco v. Union Pacific R. Co., 9 Cir., 111

F.2d 746; Jarka Corp. v. Penna. R. Co., 4 Cir., 130 F.2d 804.

 It, therefore, appears well settled that parties who contract on a subject matter concerning where known usages or customs are prevailing, incorporate such usages or customs by implication into their agreements if nothing is said to the contrary. Dixon et al. v. Chase Nat. Bank of New York, 2 Cir., 144 F.2d 759, 762.

Also a general custom need not be pleaded, such as was done in this case, since the Court may take judicial knowledge of a custom which extends throughout the country and is recognized as part of the common law. In re Bowling Green Milling Co., Inc., 6 Cir., 132 F.2d 279.

I realize that the custom or usage may not be shown to vary the terms of the written contract unless the custom or usage is so well established, general and uniform that the parties are presumed to act and contract with reference to it, and that said custom or usage can only be proven by instances of actual practice or a succession of individual facts and cannot be proven by the opinion of a witness. Wilson Distilling Co. v. Foust Distilling Co., D. C., 60 F.Supp. 373, 375.

To recapitulate, it is set forth in the complaint that the defendant is engaged in interstate commerce; that the original plaintiffs and the petitioners who desire to intervene were employed as trainmen, and were working for the defendant by virtue of the provisions of a written contract; that said contract provided that the plaintiffs would not be required to couple air or steam hose where car inspectors or air inspectors were available; that no provision was made for the payment to said employees where said services were performed, and that by virtue of a general nationwide and established or habitual practice and custom, said employees were entitled to additional pay when said services were rendered.

It is impossible for me to decide at this time whether the custom or usage can be established in accordance with the measure of proof required by law. However, the allegations of fact in connection therewith specifically refer to an abrogation or modification of the contract executed under the provisions of the Railway Labor Act. The Railway Labor Act is a law regulating interstate commerce and, therefore, under the provisions of the Judicial Code, this Court will have jurisdiction independent of the amount in controversy or diversity of citizenship. Primakow v. Railway Express Agency, D. C., 57 F.Supp. 933; Mulford v. Smith, 307 U.S. 38, 46, 59 S.Ct. 648, 83 L.Ed. 1092.

It is, therefore, my opinion that the motion to intervene should be granted since the basis of the cause of action involves the interpretation of the contract which was required to be drawn under the provisions of the Railway Labor Act and, as a result thereof, there is a question existing which arises under a law regulating commerce, and, under the provisions of the Judicial Code, original jurisdiction is vested in this Court.