**HUNTER–WILSON DISTILLING CO., Inc. v. FOUST DISTILLING CO.**

Civ. A. No. 1163.

United States District Court
M. D. Pennsylvania.

June 24, 1949.

Douglass D. Storey, Harrisburg, Pa., Ezra Cornell, New York City, David P. Gordon, Baltimore, Md., for plaintiff.

William Hoffenberg, Baltimore, Md., Mark T. Milnor, Harrisburg, Pa., for defendant.

MURPHY, District Judge.

Plaintiff, a Maryland corporation,[1] in six counts sought damages from defendant, a Pennsylvania corporation engaged in this district in the business of distilling whiskey and as owner and operator of a United States Government bonded warehouse. The case was tried to the court without a jury.

The first three counts have been disposed of.[2] In Count Four plaintiff demands $534.80, a tax refund allegedly improperly withheld by defendant; and in Count Six $146.00, a duplicate payment admittedly due, subject to defendant's claim of set-off for $705.20 storage charges.

In Count Five plaintiff seeks $5000.00 damages as a subpurchaser and assignee for breach of warranty as to excess outage of

---

[1] The corporate title and name of the party plaintiff was changed by amendment. Wilson Distilling Co. Inc. v. Foust Distilling Co., D.C., 60 F.Supp. 373.

[2] By summary judgment, as to Count One defendant was ordered to surrender 285 barrels of plaintiff's whiskey against which it improperly asserted a lien for storage charges of $705.20 on 1763 barrels of plaintiff's whiskey previously released to plaintiff under a separate bailment. Wilson Distilling Co., Inc. v. Foust Distilling Co., D.C., 51 F.Supp. 744. Counts Two and Three were abandoned at the trial. In Count Two plaintiff claimed $1000.00 damages based on defendant's refusal to surrender the aforesaid 1763 barrels of plaintiff's whiskey; in Count Three $5000.00 damages for alleged negligence of defendant in the storage of 29 barrels of whiskey.

<... 

**998**

whiskey sold by defendant to · plaintiff's vendor and assignor.

Jurisdiction arises from diversity of citizenship and a controversy involving an amount in excess of $3000.00 exclusive of interest and costs. 28 U.S.C.A. § 41(1), Revised Code, § 1332.

Defendant charges plaintiff with bad faith and insists that the requisite amount is not in controversy. We disagree.

■■■■■. In determining the jurisdictional amount we consider the sum of all the claims which are properly joined. Gray v. Blight, 10 Cir., 112 F.2d 696, certiorari denied 311 U.S. 704, 61 S.Ct. 170, 85 L.Ed. 457.

"The rule governing dismissal for want of jurisdiction * * * is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845.[3]

■■■ Defendant admits the tax was paid with plaintiff's money and that the refund when received by defendant belongs to plaintiff. Defendant contends, however, that it never received the check; plaintiff admits that defendant's books do not reflect such receipt. The evidence shows the government mailed the check to the defendant. Despite notice to the defendant that the check was mailed and not received, it is apparent defendant exercised no zeal in attempting to obtain the check or duplicate thereof. The money belongs to the plaintiff, subject, however, to defendant's claim of set-off.

Plaintiff is entitled to $146.00, the amount of the duplicate payment, subject to defendant's claim of set-off.

As to the claim for breach of warranty:

In March, 1940, defendant sold to Wilson Distilling Co., Inc., a Maryland corporation (herein Old Wilson), 2535 barrels of rye whiskey then on storage in defendant's warehouse. The warehouse receipts covering the whiskey had previously been pledged by defendant with the York Trust Company at York, Pennsylvania, as collateral security for a loan. The warehouse receipts were surrendered, properly endorsed, cancelled, and new receipts issued to Old Wilson under date of March 1, 1940. As a part of the transaction defendant gave to Old Wilson a warranty[4] as to excess outage (an outage or loss beyond that allowed by the government for tax computation purposes) in the following terms:

"We also wish to advise that we will guarantee any excess outage on the above lot in accordance with the statutory allowance given by the government. It is fur-

---

[3] Unsuccessful as well as successful suits may be brought. The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716. See and compare Barry v. Edmunds, 116 U.S. 550, 6 S.Ct. 501, 29 L.Ed. 729; Miller-Crenshaw Co. v. Colorado Mill & Elevator Co., 8 Cir., 84 F.2d 930; Simecek v. United States Nat. Bank, 8 Cir., 91 F.2d. 214; Kimel v. Missouri State Life Ins. Co., 10 Cir., 71 F.2d 921; Sparks v. England et al, 8 Cir., 113 F.2d 579 at page 582; Wyoming Ry. Co. v. Herrington, 10 Cir., 163 F.2d 1004 at page 1006.

[4] The parties agree that although the provision speaks in terms of "guarantee", it constitutes a warranty. Allen v. Mitten Bank Securities Corp., 129 Pa.Super. 341 at page 350, 195 A. 459; Guillon v. Earnshaw, 169 Pa. 463 at page 469, 32 A. 545.

ther understood that when the allowance **is** to be allowed, it will be determined on a regauge basis as of the time tax payments or shipments are made, which will be at the Foust Distilling Co., Inc., Glen Rock, Pa."

December 28, 1940, Old Wilson sold and assigned all of its assets, except shares of its stock and that of others, to Wilson Distilling Co., Inc., a Maryland corporation (herein New Wilson).[5]

No notice was given to defendant as to the change in ownership. The warehouse receipts were apparently endorsed in blank by the president of Old Wilson. They contained no reference whatsoever to the warranty by defendant.[6] The agreement between Old and New Wilson contained no specific reference to the letter of warranty.

The first notice to defendant of the change in ownership appears to be in a letter dated April 14, 1942, wherein Joseph E. Seagram and Sons, Inc., notified defendant the whiskey was owned by its subsidiary, Wilson Distilling Co., Inc.

October 29, 1942, when twenty-five barrels of the whiskey were regauged and tax paid, the regauge showed an excess outage of 438.3 proof gallons. Plaintiff as subvendee and assignee of Old Wilson seeks to recover for breach of warranty.

Since this case is in federal court on diversity grounds only, we look to Pennsylvania law to determine the rights of the parties, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; as to conflict of laws, Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; as to the place of contracting, interpretation, etc., see Newspaper Readers Service, Inc. v. Cannonsburg Pottery Co., 3 Cir., 146 F.2d 963; Monticello Distilling Co. v. Dannenhauer, 46 Pa.Super.Ct. 485, 488; § 350, Restatement—Conflict of Laws.

Ordinarily recovery may be had for breach of warranty in making a sale only where there is privity of contract between the parties to an action.[7] Bonenberger v. Pittsburgh Mercantile Co., 345

---

[5] December 20, 1940, Distillers Corp.—Seagrams Ltd. (herein Seagrams), Old Wilson, and others agreed to the "purchase by Seagrams and the sale by Old Wilson of all the assets of Old Wilson." Seagrams directed Old Wilson to convey, assign and transfer its assets to New Wilson (organized on or about December 14, 1940), a wholly owned subsidiary of Seagrams. December 28, 1940, Old Wilson "granted, bargained, sold, assigned, aliened, remised, released, conveyed, transferred, set over and confirmed to New Wilson, its successors and assigns" all of its right, title and interest in and to the whole of its assets with the exception of the shares of stock of Old Wilson, its subsidiaries and affiliates.

A third company named Wilson Distilling Co., Inc., a New York corporation, a wholly owned subsidiary of Old Wilson, having no known physical assets, January 13, 1941, "bargained, sold, assigned, transferred and conveyed" all of its assets to New Wilson effective as of December 28, 1940. Plaintiff in the early stage of these proceedings contended the warranty was given to Wilson of New York and later conveyed and assigned to Old Wilson. Later by amendment it contended the warranty was made directly to Old Wilson and passed by sale and agreement to New Wilson. Plaintiff and defendant disagree as to which company was the warrantee of de-

fendant. As we view the matter, the ultimate outcome is the same.

[6] The warehouse receipts provided inter alia:

"(6) It is hereby expressly agreed that we shall be and are absolved from any and all liability or risk of every kind in case of loss or damage to said whiskey resulting from the elements, fire, riots, strikes, labor troubles, accidents, evaporation, leakage, shrinkage, theft or any cause beyond our control.

(11) The term 'owner of this receipt' as used herein, shall be held to mean the party who appears upon our records to be such owner.

(12) The undersigned warrants that the whiskey covered by this receipt is packaged in new, charred, oak barrels. Transferable Only On The Books Of The Corporation."

[7] Certain exceptions have been made. "The abolition of the doctrine occurred first in the food cases, next in the beverages decisions and now has been extended to those cases in which the article manufactured, not dangerous or even beneficial if properly made, injured a person because it was manufactured improperly." Mannsz v. Macwhyte, 3 Cir., 1946, 155 F.2d 445, 450. See Ebbert v. Phila. Elec. Co., 330 Pa. 257, 198 A. 323; Henderson v. National Drug Co., 343 Pa. 601 at 611, 612, 23 A.2d 743; Vol. 52, Dickinson L.Rev., March 1948, p. 135.

1000

Pa. 559, 28 A.2d 913, 143 A.L.R. 1417; 6 Uniform Sales Act, § 12, 69 P.S. § 121; Post v. Burnham, 3 Cir., 1897, 83 F. 79, certiorari denied 169 U.S. 735, 18 S.Ct. 945, 42 L.Ed. 1215; Timberland Lumber Co., Ltd. v. Climax Mfg. Co., 3 Cir., 1932, 61 F.2d 391. See Wolstenholme, Inc. v. Jos. Randall & Bro., Inc., 295 P. 131, 144 A. 909; Loch v. Confair, 361 Pa. 158, 63 A.2d 24; see discussion Univ. of Pa. L. Rev. Vol. 97, No. 6, May 1949, p. 912; Dillon v. Wm. S. Scull Co., 164 Pa.Super. 365, 64 A.2d 525; Jones v. Boggs & Buhl, 355 Pa. 242, 49 A.2d 379. As we view the law the result would be the same under Pennsylvania or New York law, whichever is applied. As to New York, see Levis v. Pope Motor Car Co., 202 N.Y. 402, 95 N.E. 815; Chysky v. Drake Bros. Co., Inc., 235 N.Y. 468, 139 N.E. 576, 27 A.L.R. 1533; and see Ketterer v. Armour & Co., 2 Cir., 1917, 247 F. 921, L.R.A. 1918D, 798; Heggblom v. John Wanamaker, 178 Misc. 792, 36 N.Y.S.2d 777, 780.

"It is a well-settled rule of the common law that the benefit of a warranty on the sale of personalty does not run with the chattel on its resale and does not inure to the benefit of a subsequent purchaser of the chattel so as to give him any right of action on the warranty as against the original seller." 46 Am.Jur.Tit. Sales § 307, p. 489; Note 51 L.R.A.(N.S.) 1111, 8 A.L.R. 667, and see 35 Cyc.Law and Procedure, Tit. Sales § 5(c), p. 370; 55 C.J.Tit. Sales, § 679(b), p. 665, 666 and Id. § 796, p. 815; 4 Williston on Contracts, Rev.Ed. § 998, p. 2753; 1 Williston on Sales, Rev.Ed. § 244, p. 645. As to Maryland see Esbeco Distillery Corp. v. Owings Mills Distilling Inc., D.C.D.Md., 43 F.Supp. 381 at 388.

Was the warranty made to Old Wilson assignable to New Wilson? Did plaintiff acquire any greater rights merely because the agreement of sale also spoke in terms of assignment? It will be noted that there is no evidence of any excess outage having occurred until after title had passed from Old Wilson, so that Old Wilson suffered no loss from the breach of warranty. Similarly there is no question here of Old Wilson having made any new warranty to New Wilson.

"* * * a legal assignment is * * * 'a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, chattel, or other thing.' Griffey v. N. Y. Cent. Ins. Co., 100 N.Y. 417, 422, 3 N.E. 309, 311, 53 Am.Rep. 202. Schaefer's Estate, 194 Pa. 420, 45 A. 311; Johnson's App. 103 Pa. 373. See also Restatement on Contracts, Section 149, [p. 179]; 6 C.J.S., Assignments, [p. 1045], § 1; 4 Am.Jur. p. 229, section 2." Purman Estate, 358 Pa. 187 at page 190, 56 A.2d 86, 88.

"The familiar doctrine that an assignee of a nonnegotiable chose in action takes all the rights of his assignor * * needs no citation of authority." Marsh v. Bowen, 335 Pa. 314 at 317, 6 A.2d 783, 785.

§ 151 of the Restatement of the Law of Contracts provides inter alia: "A right may be the subject of effective assignment unless (a) the substitution of the right of the assignee for the right of the assignor would vary materially the duty of the obligor, or increase materially the burden or risk imposed upon him by his contract * * *"

Wilson Distilling Co., Inc. v. Foust Distilling Co., D.C., 60 F.Supp. 373, in denying plaintiff's motion for summary judgment on Count Five, held at p. 375 that the rights under the letter of warranty were not assignable. The court relied upon § 41 of the Pennsylvania Warehouse Receipts Act, 6 P.S. § 161, "A person, to whom a negotiable receipt has been duly negotiated, acquires thereby,—a. Such title to the goods as the person negotiating the receipt to him had, or had ability to convey * * *", and stated further that "Privity of contract cannot be obtained by a mere assignment of a contract. The consent of the parties to the contract must be shown in some manner." Citing Malamut v. Haines, D.C., 51 F.Supp. 837; Peoples-Pittsburgh Trust Co. v. Henshaw et al, 141 Pa.Super. 585, 15 A.2d 711.

While we are not bound by the previous ruling (see United States v. Thurston County Neb., D.C., 54 F.Supp. 201 at page

204) after a study of the testimony, the briefs of counsel, and an independent examination of the authorities, we find no reason for reaching a different conclusion.

While 35 Cyc. of Law and Procedure— Sales—p. 370, states that a right of action would lie when the warranty was specifically assigned, citing in support thereof Ranney v. Meisenheimer, 1895, 61 Mo.App. 434 at page 439,[8] neither makes clear whether they speak of an assignment made before as well as after the breach occurred.

See 51 L.R.A.(N.S.) 1111 at page 1114 (1914) "where a purchaser of a chattel has a complete cause of action for a breach of warranty there can be no doubt that it may be assigned to the same extent as any other complete cause of action. The few cases which have considered the question make it doubtful whether the warranty itself, at least prior to the breach thereof, may be assigned so as to enable the assignee thereof to maintain an action at law for its subsequent breach."

55 C.J.Sales—§ 679(b), page 666, holds "* * * the benefit of the warranty does not inure to a subsequent purchaser or assignee * * * by virtue of his title" and at page 668, "* * * one to whom the contract of warranty is expressly assigned by the purchaser of goods is entitled to the benefits arising therefrom,[9] a limitation on the requirement of privity of contract frequently noted in stating the general rule; but, of course, where causes of action are not assignable, such an assignment is not operative to convey the warranty to the assignee."[10] Here too as in Cyc. no distinction is made as to whether or not the right had ripened by an actual breach before assignment.[11]

---

[8] See Ranney v. Meisenheimer, supra, at page 439. "Warranties of chattels are available only between the parties to the contract and not in favor of third parties unless they claim as assignees of the warranty."

[9] Citing Brock v. Newmark Grain Co., Inc., 64 Cal.App. 577, 222 P. 195 (not clear whether assignment made before or after breach); Pease & Dwyer Co. v. Somers Planting Co., 130 Miss. 147, 93 So. 673 (one may assign a right of action which may have accrued to him growing out of a breach of warranty. Relief was denied because plaintiff was only a subpurchaser); Wisdom v. Morris Hardware Co., 151 Wash. 86, 274 P. 1050 (assignment after breach); Peregrine v. West Seattle State Bank, 120 Wash. 653, 208 P. 35 (the bill of sale read to X "his heirs, executors, and assigns". It was contended the provision created privity of contract between the subpurchaser and remote vendor. Held, however, there was no specific assignment); Bordwell v. Collie, 45 N.Y. 494 (the right had ripened into a cause of action before the assignment. See at 497 "when the plaintiff had paid his vendee, he had a right of action against his vendor." The headnote reads "in the case of personal property, the vendee can only resort to his immediate vendor, as there is no privity of contract between the last vendee and a remote vendor.")

As to the law in the State of Washington, cf. Cochran v. McDonald, 1945, 23 Wash.2d 348, 161 P.2d 305, 307, "* * * The correct rule of law is that a vendor of goods is not liable upon the express warranty of the manufacturer unless in making a sale he adopts the warranty as his own, or such warranty is specifically assigned to his vendee." In Jolly v. C. E. Blackwell & Co., 1922, 122 Wash. 620, 211 P. 748 at page 750, "We have held that, a warranty on the sale of personal property not running with the property, an assignee of the purchaser cannot avail itself thereof as against the original seller, unless the assignee assumes the payment of the original purchase price, and the warranty is specifically assigned to the second purchaser. Peregrine v. West Seattle State Bank, 120 Wash. 653, 208 P. 35; 35 Cyc. 370; 24 R.C.L. 158."

[10] Smith v. Williams, 1903, 117 G. 782, 45 S.E. 394, 97 Am.St.Rep. 220; Kendig v. Giles, 9 Fla. 278; Dukes v. Nelson, 27 Ga. 457; Broughton v. Badgett, 1 Ga. 75; Zuckerman v. Solomon, 73 Ill. 130; and see Salle v. Lights Ex'rs, 4 Ala. 700, 39 Am.Dec. 317 at page 320.

[11] The same is true of Coolidge v. Burnes, 1868, 25 Ark. 241 ("the vendor and his assignees are the only persons who have a right of action for breach of warranty."). Cf. Nelson v. Armour Packing Co., 76 Ark. 352, 90 S.W. 288, 6 Ann.Cas. 237; Booth v. Scheer, 105 Kan. 643, 185 P. 898, 8 A.L.R. 663; Farr-Barnes Lumber Co. v. Town of St. George, 128 S.C. 67, 122 S.E. 24; Walrus Mfg. Co. v. McMehen, 39 Okl. 667, 136 P. 772, 51 L.R.A.,N.S., 1111 at page 1115; Standard Sewing Mach. Co. v. New State Shirt & Overall Mfg. Co., 42

46 Am.Jur.Sales, § 308, p. 490, "* * * in accord with the generally recognized rule of assignability of a right or cause of action arising out of a breach of contract, an assignment of a cause of action based on a breach of a warranty * * * entitles the assignee to bring an action upon it * * * On the other hand, there is some authority to the effect that a warranty itself, at least prior to a breach thereof, may not be assigned so as to enable the assignee thereof to maintain an action at law for its subsequent breach." See 4 Williston on Contracts, Rev.Ed. (1936) § 998, p. 2753.

1 Williston on Sales, Rev.Ed. (1948) § 244, p. 645, "It is a general rule that one who has a right in contract or quasi-contract may assign that right in effect at common law by giving the assignee the power to enforce that right in the name and stead of the assignor and generally by statute in his own name. There seems no reason why a warranty should be an exception to this rule. However this may be, the prevailing rule is that the mere resale of a warranted article does not give the subpurchaser a right to sue the original seller for damages caused him by defects either in the title or quality of the goods. * * *

"Two reasons may be given for the inability of the subpurchaser to take advantage of the breach of warranty unless the cause of action is assigned to him. In the first place the sale of the chattel does not indicate that the seller means to part with his right of action for damages against one who previously sold the article to him. On the contrary, it may be assumed, that if the original warranty has been broken the original purchaser means to retain whatever right he may have. *Another reason is that a warranty must, it seems, like an insurance policy be considered as a contract of personal indemnity. Therefore, though one who purchased goods with a warranty might assign a right of action already accrued on the warranty, he could not enlarge its scope so as to make it include the indemnification of subpurchasers. The right would always remain a right to damages for the injury the first buyer suffered for the defective condition of the article * * *"* (Emphasis supplied).

Obviously the first reason cited by Williston, supra, would not here apply.

▮ As to the second, while it has been said by a great judge that "the assault upon the citadel of privity is proceeding in these days apace,"[12] and while we have found no precise ruling on this question by either the New York[13] or Pennsylvania courts; based upon common law,[14] the holdings as to the rights of the sub-vendee, supra, and reasoning from analogy,[15] we hold that under the New York and

---

Okl. 554, 141 P. 1111 at page 1112; cf. Chicago R. I. & P. Ry. Co. v. Bankers' National Bank, 32 Okl. 290, 122 P. 499; Olson Bros. v. Hurd, 20 Idaho 47, 116 P. 358 (suit by original vendor after title passed); Showen v. J. L. Owens Co., 158 Mich. 321, 122 N.W. 640, 133 Am.St.Rep. 376.

[12] Cardozo, J. in Ultramares Corp. v. Touche, 1931, 255 N.Y. 170 at 180, 174 N.E. 441, 445, 74 A.L.R. 1139. See U. S. Pipe & Foundry Co. v. Waco, 130 Tex. 126, 108 S.W.2d 432, 435, certiorari denied 302 U.S. 749, 58 S.Ct. 266, 82 L.Ed. 579." * * * The tendency of modern courts (is) away from the narrow legalistic view of the necessity of formal immediate privity of contract in order to sue for breach of an express or implied warranty", and see Ocean Accident & Guarantee Corp. Ltd., v. Southwestern Bell Tel. Co., 8 Cir., 1939, 100 F.2d 441,

122 A.L.R. 133, holding an assignee to be in the same privity as his assignor.

19 North Carolina Law Rev. 551 at 554, "* * * if a warranty consists of an agreement to be liable to the other contracting party if certain things are presently untrue, or if certain things happen, or fail to happen, in the future, then the rights of an assignee should be determined by general principles as to the assignability of contracts."

[13] Cf. McBride v. Farmers' Bank, 26 N.Y. 450, 458. "The assignee takes the cause of action which the assignor had, and no other. If the assignor had no cause of action against the defendant, the assignee acquires none."

[14] 2 Blackstone's Commentaries, Lewis Ed. p. 290, Note 53, and see 4 Am.Jur.—Assignments, § 22, p. 246, Id. § 26, p. 249.

[15] As to cases of guaranty, see 38 C.J. S. Guaranty, § 42(c) p. 1190, Lewis v.

Pennsylvania law defendant's vendee could not assign the warranty to the plaintiff and that plaintiff as assignee cannot recover from the defendant.

█ As an additional arrow to his bow, plaintiff called three witnesses in an attempt to show that there was a custom in the whiskey trade that a warranty as to excess outage travels with the barrel, relying particularly upon Conestoga Cigar Co. v. Finke et al., 144 Pa. 159, 22 A. 868, 869, 13 L.R.A. 438. See comment on this case in Wilson Distilling Co. v. Foust Distilling Co., D.C., 60 F.Supp. 373 at page 375. It is sufficient for present purposes to say that considering the testimony of plaintiff's witnesses and that of the president of the defendant corporation, we find there was no such custom.

█ "A custom in order to be considered in construing a contract must be shown to have been known to both parties to a contract, or so well established, general, and uniform that the parties are presumed to act and contract with reference to it. Miller v. Wiggins, 227 Pa. 564, 76 A. 711, 19 Ann.Cas. 942. 'Particular usages and customs of trade or business must be shown to have been known by the parties to be affected by them or they will not be binding, unless they are so notorious, uniform and well established that a knowledge of them will be presumed.' 17 Corpus Juris 458, § 18." Makransky v. Weston, 304 Pa. 383, 387, 155 A. 741, 743; Everly v. Shannopin Coal Co., 139 Pa.Super. 165, 11 A.2d 700; Doyle v. Atlantic Refining Co., 357 Pa. 92, 53 A.2d 68.

█ "The existence of a useage or custom can only be proven by instances of actual practice; a succession of individual facts; and cannot be proven by the opinion of a witness." Wilson Distilling Co. v. Foust Distilling Co., supra, 60 F.Supp. 373, at page 375; Ames Mercantile Co. v. Kimball S. S. Co., D.C.Cal., 125 F. 332; Shipley v. Pittsburgh & L. E. R. Co., D. C., 68 F.Supp. 395, 32 C.J.S. Evidence § 483, p. 139; Aurand v. Universal Carloading & Dist. Co., 131 Pa.Super. 502, 200 A. 285.

Finally plaintiff contends that Old and New Wilson were subsidiaries of Seagrams (the evidence is to the contrary at least from March 1940 to December of 1940) and that there was, in effect, not a sale in the usual sense, all assets having been conveyed except the stock of Old Wilson, its subsidiaries and affiliates, but a business merger. So far as the testimony showed, Old Wilson continued its corporate existence after the sale to New Wilson. See Wilson Distilling Co. v. Foust Distilling Co., supra, 60 F.Supp. at page 376.

The doctrine of Edirose Silk Mfg. Co. v. First Nat. Bank & Trust Co., 338 Pa. 139 at page 143, 12 A.2d 40, and Great Oak B. & L. Ass'n v. Rosenheim, 341 Pa. 132 at page 137, 19 A.2d 95, is not here apposite, nor do we find any relevancy or help for plaintiff's contention in the holding in Commonwealth ex rel. Department of Justice v. Socony-Vacuum Oil Co., Inc., 347 Pa. 410, 32 A.2d 631.

█ The defendant has presented testimony in support of his set-off amounting to $705.20. On May 22, 1942, New Wilson surrendered to the defendant warehouse receipts covering 1763 barrels of whiskey and paid the storage charges to May 31, 1942. The whiskey was not delivered until September of 1942. The defendant contends that the delay was

Esch, 155 Misc. 212, 279 N.Y.S. 77; McDoal v. Yeomans, 8 Watts. 361 at page 363; Pittsburgh & Connellsville R. Co. v. County of Allegheny, 63 Pa. 126 at page 141. Where the duty is personal, see Siewers v. Commonwealth, 87 Pa. 15; Houseman v. Girard Mutual Bldg. & Loan Ass'n., 81 Pa. 256. As to insurance, King v. Lancaster County Mutual Ins. Co., 45 Pa.Super. 464; Newark Fire Ins. Co. v. Turk, 3 Cir., 6 F.2d 533, 534, 43 A.L.R. 496. Where the assignment is made after breach occurs, cf. 38 C.J.S. Guaranty § 42(c) p. 1190, and see 6 C.J. S. Assignments § 23, p. 1070; 5 Appleman Insurance Law and Practice, p. 585 § 3421; West Branch Ins. Co. v. Helfenstein, 40 Pa. 289, 89 Am.Dec. 573; National Memorial Services v. Metropolitan Life Ins. Co., 159 Pa.Super. 293 at page 295, 48 A.2d 143. Generally see Tredway v. Ingram, 102 Pa.Super. 459 at page 463, "What duty can there be when there is no relation between the parties by contract, by statute, or at common law."

due to causes over which it had no control, e. g., labor supply and inability to get railroad cars. The plaintiff in Count Two of the complaint sought to hold defendant responsible in damages for delay in making delivery. This count was, however, abandoned by plaintiff at the trial. There was an agreement between the parties that storage should be paid on all whiskey for the time that it was actually in the defendant's warehouse. We feel, therefore, that defendant's counterclaim should be allowed in the sum of $705.20.

Heretofore we have found for the plaintiff in the sum of $534.80, and the sum of $146.00, or a total of $680.80. Making allowance for defendant's counterclaim, defendant is entitled to a judgment against the plaintiff in the sum of $24.40.

An order in compliance with this opinion will be filed herewith.